## Case No. 16,286.

### UNITED STATES v. SHULTS.

[6 McLean, 121.] [2]

Circuit Court, D. Ohio. Oct. Term, 1854.

CRIMINAL LAW—INSANITY AS DEFENSE—TESTS OF SANITY.

1. An individual is liable to punishment, when he can discriminate a right from a wrong act.

[Cited in State v. Lewis, 20 Nev. 333, 22 Pac. 248.]

2. And this can be best ascertained, not by any theory as to the mind, but by the acts of the party.

3. The concealment of the offense, an endeavor to elude the officers of justice by an escape,

---

1 [Reported by Hon. William Cranch, Chief Judge.]

2 [Reported by Hon. John McLean, Circuit Justice.]

a judicious use of the money stolen, all show a knowledge of the offense.

4. And this is the point to be ascertained, when insanity is set up as a defense.

[Cited in U. S. v. De Quilfeldt, 5 Fed. 279.]

Mr. Morton, U. S. Dist. Atty.
Carrington & Haber, for defendant.

OPINION OF THE COURT. This is an indictment against the defendant [Nicholas Shults], charging him, while employed in carrying the mail of the United States, on a horse route, with the abstraction of certain letters, which contained bank notes and other articles of value. Plea not guilty—jury sworn.

John Keller, who is post master at Mount Ephraim post office, Noble county, in Ohio, states that defendant carried the mail from Sarahsville, in Noble county, to Washington in Guernsey county, a distance of twenty miles. In June, latter part, or first of July, witness mailed two letters for California, which were forwarded to the distributing office at Wheeling or Cleveland, directed to Nicewall. The envelope was returned to witness as being found in the road more than a month after it was mailed. The second letter was reported to have been found on defendant's route. Another letter was found on the same route, which had been mailed on the 6th or 7th of June. Mr. Chance says, there must have been two violations of the mail while defendant carried it, which was about a week. Witness found a letter on the route on Friday after defendant commenced carrying the mail on the route. Another letter was found on the route which must have passed through the office of witness. Mr. Forman is post master at Senecaville. He designates a letter picked up on the route; another letter found on the road must have been a letter forwarded in the mail. Other witnesses proved that other letters were found on the route, which had been mailed by the post masters on the route, and which from their face purported to have contained money. William Young, saw defendant first of June, and received from him a debt of sixty or seventy dollars. He had a watch, and witness asked him how he got so much money; he replied that he had sold a colt for sixty dollars. Witness exchanged with him ten dollars, giving silver for paper; next day he came and bought thirty dollars in gold from witness. Mr. Renderneck, arrested the defendant near Marietta, in a wood boat, at which time he admitted that he had taken from the mail seventy-six dollars. Several witnesses were examined to show mental imbecility in the defendant, so as to be incapable of committing a crime; and his defense rested on this ground. Several medical gentlemen were examined, who differed somewhat in their opinions, some of them stating that in their view he was not a proper subject of punishment.

In the charge to the jury, the court said, there seems to be no doubt that during the short time the defendant carried the mail, he repeatedly violated it by abstracting letters from it. This is established by the numerous letters picked up on or near the route, which had been mailed at one of the post offices on the route, or were carried on it; and by the confession of the defendant that he had taken from the mail seventy-six dollars. He was destitute of money before he was employed as carrier, after which it appears he had money to a considerable amount. All this evidence is uncontradicted, and the only ground of defense is, mental imbecility.

This defense has often been made, and much has been said and written upon the subject. Nothing is more common than for medical men to differ as to the fact of insanity, which should exculpate an individual from punishment. Where the insanity is in a degree which destroys the reasoning faculty, there can be no difference of opinion amongst professional men or jurors. But where the individual is subject to occasional aberrations of mind, or where the mind seems to be under peculiar excitement and error on a particular subject, as is often the case, and rational on other subjects, or where the individual reasons illogically and strangely, which brings him to results in action which violate the laws; in all these cases, and others which might be enumerated, a close investigation is required, and a wise discrimination should be exercised. In such cases, the important fact to be ascertained is, whether the person charged can discriminate between right and wrong. If he be unable to do this, he is not a proper subject of punishment. And this fact can be best ascertained, not by any medical theory, but by the acts of the individual himself. Every person who commits a crime reasons badly. The propensity to steal in some persons is hard to resist. Where the moral development is weak and the passion of acquisitiveness strong, it will often prevail. This, in one sense, may be evidence of a partial insanity, but still the person is a proper subject of punishment. And there is no other test on this point, except the knowledge of the individual between right and wrong. And this knowledge is best ascertained by the acts of the individual in the commission of the offense, and subsequently.

Does the individual commit the offense by embracing the most favorable opportunity, in the absence of witnesses, and under circumstances likely to avoid detection. And if he steal money does he account for the possession of it in an honest way. And does he, under an apprehension of an arrest, endeavor to elude the officers of the law. All this conduces to show a knowledge that he had not only done wrong, but that he was liable to punishment.

The defendant in this case accounted for

the amount of money he had in possession by saying, he received it as the price of a colt. He changed the notes he had for gold and silver, knowing that the notes might not be current at the places to which he might go. Or he might fear that the notes might be identified, by those who forwarded them in the mail. On either supposition it showed a sound reflection on the consequence of his acts should he be arrested. He absconded, and was arrested several miles from home, on his way to the West. He was found in a close room of a boat, the door of which was locked; and it is proved that when he came to the boat the previous evening, he engaged the room and requested that the door should not be opened to any one. This shows an apprehension that he would be pursued, and a desire to escape the pursuit. These acts would seem to be unmistakable evidence of a sense of guilt, and a desire to escape punishment. He acted under a motive which usually influences culprits. When carrying the mail, on a suggestion being made to him that he might steal from the mail, the penitentiary immediately occurred to his mind. He bought and sold articles, and evidenced in such matters, no deficiency of mind. He knew the value of money and understood the matter of exchange, and the uncurrency in remote parts of bank notes.

Upon the whole, gentlemen, if you think from the evidence in the case, that the defendant in violating the mail knew he was doing wrong, and that he was liable to be punished for the act, he is a proper subject for punishment. It is true he did not conceal the letters he took from the mail, but left many of them scattered along the road he traveled, which shows a great want of caution, still, if the other qualities of his mind were in such rational exercise as to enable him to discriminate right from wrong, you will find him guilty.

The jury found the defendant guilty, and the court sentenced him to ten years in the penitentiary.