## UNITED STATES *v.* DE QUILFELDT.

*(Circuit Court, W. D. Tennessee. January 3, 1881.)*

1. CRIMINAL LAW—HUSBAND AND WIFE—MARITAL COERCION—PLEADING COVERTURE.—If a married woman be described, in an information filed against her alone, as a single woman, or be not described at all as married or single, she may either move to quash the information or plead in abatement for want of a proper addition; but if she fail to do this, and plead not guilty, that is *prima facie* evidence that she is not a *feme covert*. It is not *conclusive*, however, and she may, under the general issue, prove the marriage, as well as the other facts essential to show marital coercion.

2. SAME SUBJECT—EVIDENCE OF MARRIAGE—NEW TRIAL.—The declarations of a man and woman recognizing each other as man and wife, made at the time of their arrest in company with each other while engaged in the act of making counterfeit coins, the fact that they had been cohabiting together, and were reputed to be married, are competent proof of the marriage; and it was error to exclude it as inadmissible under the general issue, the defendant having failed to plead her coverture in abatement, for which a new trial should be granted.

3. SAME SUBJECT—REJECTION OF PROOF—INSUFFICIENCY—JURY TRIAL. A new trial will be granted in *criminal* cases for the improper rejection of competent and material testimony, although in the opinion of the court the evidence rejected was wholly insufficient to establish the issue, because the defendant has a right to the verdict of a jury on all the facts constituting her defence, and the court will not, on a motion for a new trial, undertake to pass on the weight of the proof; and especially is this so where the effect of the ruling rejecting the testimony was to preclude the defendant from offering not only that rejected but any other.

4. SAME SUBJECT—SIMULATED DEFENCE.—Where it appears to the court from occurrences at the trial that the defendant probably makes a false pretence of being a married woman and under the coercion of a husband, yet if the court improperly rejected competent and material evidence of the marriage, a new trial will be granted in order that the facts may be passed upon by a jury. The necessity of preserving to the defendant the right of trial by jury is paramount to all other considerations, and precludes the court not only from passing on the sufficiency of the proof rejected, but from taking further proof on the motion for a new trial as to the fact of marriage, so as to determine whether the defendant had been injured by the error committed.

5. SAME SUBJECT—MARITAL COERCION IN THE FEDERAL COURTS.— *Quære:* Whether the common-law fiction that a married woman committing an offence in the presence of her husband presumably acts by his coercion, furnishes any excuse or exemption from the penalties imposed by an act of congress for the commission of statutory crimes, when the statute itself makes no such exception? The opinion is expressed by the district judge that the doctrine probably has no place in the criminal jurisprudence of the United States, but he declined to decide it in the absence of his brother judges.

On Motion for New Trial.

*W. W. Murray,* Dist. Att'y, and *John B. Clough,* Ass't Dist. Att'y, for the United States.

*M. D. L. Stewart, J. S. Duval,* and *B. B. Barnes,* for defendant.

HAMMOND, D. J. The defendant, being arraigned upon an information charging her with counterfeiting coins, pleaded not guilty, and was put upon her trial. She is described in the information simply as "Annie De Quilfeldt, otherwise known as Annie Egbert;" all addition, such as "wife of A. B.," "widow," or "spinster," being omitted. On the trial, a witness, the detective who arrested her, was asked whether she was not living with Charles G. De Quilfeldt, who had just been convicted of counterfeiting, as his wife; whether they, at the time of arrest, called and recognized each other as such, and whether they were not reported to be man and wife among their neighbors. This testimony was, on objection of the district attorney, excluded. There was proof tending to show that, when the defendant was caught in the act of moulding the coins, this man, De Quilfeldt, was either present, or so

nearly connected with the act, as to shield her under the doctrine of marital coercion, if she be in fact his wife. He was proved to have been engaged in counterfeiting at his house, where this defendant lived with him. The testimony was excluded, as will appear hereafter, on the ground that by pleading over the defendant had waived the defence of coverture. But the court sought to protect her against the effect of the ruling by offering to allow her to withdraw a juror, enter a mistrial, and then to withdraw the plea of not guilty and plead the want of a proper addition, describing her as married or single, in abatement. Upon being informed that a plea in abatement must be verified by affidavit, her counsel, upon consultation with her, declined to take this course, and she was convicted. She now moves for a new trial for error committed by the court in excluding testimony tending to show that she was married to De Quilfeldt, and raising the presumption in her favor of coercion by her husband.

Before entering upon the consideration of the question whether the testimony was properly rejected, it may be proper to say that this defence of marital coercion as a protection to women engaged in the commission of crime is not a favored one, and, at least in modern times, has almost lost all solid foundation for its existence. It has been abrogated by statute in some states, and might well be in all. 1 Benn. & Heard, Lead. Crim. Cas. (2d. Ed.) 81, and notes; Steph. Dig. Cr. L. (St. Louis Ed. 1878,) art. 30, p. 20, and note 2, p. 362. It is almost an absurdity in this day to pretend that husbands can or do coerce their wives into the commission of crimes, and, where coercion appears as a fact, the court or jury would always allow it to mitigate punishment, or it might well be a recommendation to executive clemency; but to hold it to be presumed as a fact, in all cases where the husband is present, is the relic of a belief in the ignorance and pusillanimity of women which is not, and perhaps never was, well founded, and does them no credit. I have had serious doubts whether this common-law fiction has a place in the criminal juris-

prudence of the United States. Our offences are purely statutory, and we do not look to the common law, or the law of the states, to furnish us any element or characteristic of an offence. *U. S.* v. *Coppersmith,* 4 FED. REP. 198; *U. S.* v. *Walsh,* 5 Dill. 58.

This statute against counterfeiting says *"every* person who falsely makes, forges, or counterfeits any coin," etc., shall be punished. It makes no exception in favor of married women, and it may well be doubted if the courts can engraft an exception on the statute. *Commonwealth* v. *Lewis,* 1 Met. 151, 153. I am inclined to believe it is the logical result of the doctrine that our crimes are statutory, and that we have no common law of crimes, except so far as the statutes have adopted it, in matters of evidence and practice, that no exemption exists unless congress defines and declares it. The presumption of coercion may be a rule of evidence, but the exemption of the wife on account of it is a rule of law that congress has not declared. I have not found the point discussed, nor any case recognizing this doctrine of marital coercion, in the federal courts. There are cases recognizing insanity and perhaps infancy as a defence, but, generally, the cases are those of common-law crimes on the high seas or elsewhere, of which these courts have jurisdiction, and which are defined not by statute, but by the adoption by congress of the common law in its fullest scope. Insanity was recognized as a defence to statutory offences in *U. S.* v. *Schultz,* 6 McLean, 121, and *U. S.* v. *Lancaster,* 7 Biss. 440, and there may be other cases. I am not willing, however, without consultation with my brother judges on this bench, to exclude this defence on that theory, and shall, therefore, for the purposes of this motion, assume that we are to be governed by the common-law principle that a wife committing an offence in the presence of her husband is *prima facie* presumed to act by his command, and is, therefore, not guilty unless it can be shown that she was in fact not governed by him.

The testimony was excluded on the authority of the statement that "if a *feme covert* be indicted as a *feme sole,* her

proper course is to plead the misnomer in abatement, for, if she pleads over, she cannot take advantage of it. She must aver her marriage in her plea, and prove it affirmatively." 3 Whart. Cr. Law, (7th Ed.) § 70. If, as is now argued, this means to apply only to the plea of *misnomer*, the paragraph is misleading, for the mere erroneous statement of the defendant's *name* in an indictment or information must be corrected by plea in abatement, whether the defendant be man or woman, married or single, and the *status* of the woman, as regards her being married or single, is, it seems to me, wholly immaterial, except as a matter of evidence on the plea. Id. §§ 536, 537.

I think the author—and I say this with the utmost diffidence of one so eminent and learned in this department of the law—has confused somewhat two analogous but distinct things, namely, pleading a *misnomer* and pleading a wrong *addition* of estate, mystery, or place. Advantage is to be taken of either in the same way, but the failure to plead in abatement does not, perhaps, have the same effect; at least, not as to this matter of the addition describing a woman as married or single. The failure to plead a misnomer in abatement cures the defect if the defendant pleads not guilty, and for the purposes of that case the prisoner has the *name* given in the indictment. 3 Whart. Cr. L. *supra;* 1 Whart. Cr. L. § 233; 1 Bish. Cr. Proc. (2d Ed.) § 791; *State* v. *Thompson,* Cheves' R. 31; *People* v. *Smith,* 1 Park. Cr. Cas. 329; *State* v. *Hughes,* 1 Swan, 261; *Lewis* v. *State,* 1 Head. 329.

The addition of estate, or degree, or mystery required by statute 1 Henry V. *c.* 5, if omitted or wrongfully stated, should also be corrected by motion to quash, or plea in abatement. 1 Whart. Cr. L. §§ 243, 248; Whart. Prec. (Ed. 1849,) 7, note *e;* 1 Bish. Cr. Proc. §§ 671, 675, 772. By statute 7 Geo. IV. *c.* 64, and 14 and 15 Vict. *c.* 100, no indictment shall be now abated by reason of any plea of misnomer, or for want of or imperfection in the addition of the defendant. Id.; 1 Arch. Cr. Pl. (by Waterman, 6th Ed.) 78, 110, 111. I do not find that we have any such statutes in Tennessee, but I am informed by

my brother Horrigan, of the criminal court of this city, a very learned judge, that while it is customary to add "yeoman" as an addition, it is wholly unnecessary under our practice. Now, as to indictments against men, there can be no two opinions as to the utter uselessness of any addition such as "esquire," "gentleman," "yeoman," or the like; but when women are indicted it seems to be a matter of more importance, and quite necessary that they should be described according to the fact, as "wife of A. B.," "widow," "spinster," or "single woman," especially in view of this very doctrine of marital coercion being a defence; and the neglect to do it in this case has caused the trouble we have with this trial. If a woman be indicted as a wife, that, being an admission on the record that she is so, will be sufficient proof of it, and perhaps conclusive on the government. Otherwise, if she set up her coverture as a defence she must prove it. And proof merely of cohabitation with the man, and passing by his name does not seem to be sufficient proof of this, although, on the other hand, actual evidence of the marriage would not, perhaps, be required. 1 Arch. Cr. Pl. *supra*, 8; Whart. Prec. *supra*, 7.

I have examined the cases cited in the text-books, so far as they are accessible to me,—and I regret that some of the most important of them are not to be found in the library, and also that I have not the newer editions of the text-books themselves,—and must say that I am not able to determine with satisfaction just how a woman must or may "set up her coverture as a defence" when she is indicted separate and apart from her husband, and as a single woman. Here the defendant is not described as either married or single. and but for the feminine name of "Annie" attached to her surname, and the *alias dictum*, we would never know from the face of the information that she was a woman at all. I am of opinion that she could have moved to quash the information for want of a proper addition, or pleaded in abatement the omission, disclosing, of course, how the fact was, and upon proof of her marriage to De Quilfeldt the government would

have been compelled to amend the information by describing her as his wife. This would have settled the fact of marriage, perhaps conclusively, certainly *prima facie,* in her favor. On the other hand, if she were described as a single woman, or not described as married, which, I take it, is the same thing, and she ignores the defect and pleads not guilty, the *prima facie* presumption is that she is single; but if the fact be otherwise, she may prove it on the trial and under her plea of not guilty. The mistake made at the trial of this case was in holding that this *prima facie* presumption was *conclusive* against her because of her failure to plead in abatement.

The case of *Rex* v. *Jones*, Kel. 37, I have not been able to see, but is abstracted in 1 Russ. Cr. (8th Ed.) 24, and it there appears that it was a joint indictment against Thomas Wharton and Jane Jones. The woman pleaded (*how* it does not appear) that she was married to Wharton, and would not plead to the name of Jones. The grand jury were called in, and the court, in their presence, amended the indictment by inserting the name of Jane Wharton, otherwise called Jones, not calling her the wife of Thomas Wharton, but giving her the addition of "*spinster,*" upon which she pleaded. The court told her, however, that if she could prove that she was married to Wharton before the burglary she should have the advantage of it, but she could not, and was convicted. In *Quin's Case*, 1 Lewin, C. C. 1, (which, also, I have not seen,) cited also by Russell, it was ruled that if a woman be indicted as a single woman, and pleads to the felony, that is *prima facie* evidence that she is not a *feme covert*, but is not conclusive of the fact. 1 Russ. 24. Judge Sharswood, in this edition of Russell, makes in his notes a *quære* "whether the proper course for a woman so indicted is not to plead the wrong *addition* on arraignment, as by pleading to the felony she answers by the *name* (*sic*) by which she is indicted."

The authorities do not satisfactorily answer this *quære*, as any one may see who examines them. Mr. Russell states that if the woman pretends to be the man's wife the *onus* is on her to prove it; but where the indictment states the woman to be

the wife of the man with whom she is jointly indicted, no evidence is necessary to show that she is the wife.     1 Russ. Cr. 24.     The cases cited, however, are all cases where they were indicted jointly, and not precisely like this.     *Rex* v. *Hassall*, 2 C. & P. 434; S. C. 12 E. C. L. 660; *Reg.* v. *Woodward*, 8 C. & P. 561; S. C. 34 E. C. L. 891; *Rex* v. *Atkinson*, cited 1 Russ. Cr. L. *supra*; *Reg.* v. *McGinnis*, 11 Cox, 391, cited 3 Jac. Fish. Dig. 3114; *Rex* v. *Knight*, 1 C. & P. 116; S. C. 11 E. C. L. 335.

It sufficiently appears, however, from these authorities, that, although it may be proper that a woman indicted as a single woman should, if she relies on her coverture, plead in abatement the wrong addition, the failure to so plead it does not preclude her from taking advantage of the defence under the general issue, and she may therefore give evidence of the fact of marriage, and the other facts necessary to make out marital coercion.     It was, therefore, error to exclude the evidence offered in this case.

I am quite satisfied, however, from the occurrences at the trial, that this is a simulated defence; yet I cannot say that, upon full investigation of the facts, the jury would have so found, and it was certainly a question for the jury to try, and not for the court to now determine upon a motion for a new trial.     The defendant, on the proof, was clearly guilty. I am convinced, from her refusal to make affidavit of her marriage,. that she was not the wife in fact of her partner in crime; and this conviction has inclined me to accede to the suggestion of the district attorney, and overrule this motion, notwithstanding any error committed in refusing proof intended only to sustain a false pretence of marriage, upon the ground that she has not been injured by the ruling.     And it has occurred to me to say to the defendant now that if she will make affidavit of her marriage in fact to De Quilfeldt, or by proof show the court that there would be sufficient testimony to raise a reasonable doubt in the minds of the jury of her guilt, taking into consideration the defence of coverture, that I would grant a new trial, exercising my discretion in

the matter without regard to the technical question as to the proper mode of making the defence, or her right to make it under the plea of not guilty.  Mr. Baron Garrow said in *Rex* v. *Hassall*, 2 C. & P. 434, S. C. 12 E. C. L. 207, where a woman was convicted upon insufficient evidence of marriage, that "if the parties, however, be really married, and will make a proper application to the secretary of state, supported by proof of the marriage, they will sustain no injury by the want of evidence of marriage before me."  This implies, I take it, that he would recommend her pardon, and seems to be some support for sustaining a conviction, unless the judge is satisfied some injury has been done.  But in that case the jury had passed on the question of marriage, and the very kind of proof the defendant offered in this case was received, although pronounced insufficient by the jury and the court to prove the marriage.  It is not, therefore, an authority to uphold the verdict in this case, where the testimony was rejected.  The proof offered might not have been sufficient to prove the marriage; but of that the jury was the proper judge, not the court.  It was competent evidence, as the case of *Rex* v. *Hassall*, *supra*, adjudicates, it being there said "that though, in cases of this kind, it is not absolutely necessary to give direct proof of actual marriage, yet such evidence must be adduced as to satisfy the jury that the parties are in fact husband and wife, in the same way as to convince them of any other fact that they are to find."  The barrenness of such proof to establish the marriage is well shown, but the court permitted the jury to pass on it, nevertheless, and that, too, under a plea of not guilty, though, unlike this case, it was a joint indictment against the man and woman, she being described as a single woman.  The real question, in this branch of the case, is whether the court will grant a new trial where it appears that the evidence rejected was competent and tended to prove the issue, but was insufficient for that purpose.  In the case at bar I cannot say that the proof rejected was all the proof of which the case was susceptible, nor all the defendant would offer.  She was precluded by the ruling

made from offering this or any proof of marriage, on the ground that she had pleaded over, and thereby waived the defence.

In *Peek* v. *State,* 2 Humph. 78, it was held that if incompetent evidence be admitted in *criminal* cases, that might have influenced the jury, a new trial will be awarded, although the court may think there was enough, independently of such evidence, to convict the prisoner. 1 Bish. Crim. Proc. (2d Ed.) § 1103; 3 Whart. Cr. L. (7th Ed.) § 3258, note *u.* It was also held in *Com.* v. *McGowan,* 2 Pars. Sel. Cases, 347, cited 3 Wharton, *supra,* that after a court has rejected competent and material testimony offered by a defendant charged with crime, the court will not refuse relief on the assumption that the rejected evidence would not have availed the accused if it had been received. Both the above-cited authors seem to doubt if this be the general rule, though they put Tennessee down as holding to it, on the authority of *Peek's Case, supra.* That was a case where incompetent evidence was admitted, and not where that which was competent and material was rejected; but I think, on principle, the rule should be the same in either case. Besides, I am of opinion that the adjudications in Tennessee establish the principle that a new trial must be granted for the improper rejection of testimony, as well as its improper admission, without reference to the opinion of the court as to its probable effect on the verdict.

In *Workman* v. *State,* 4 Sneed, 425, the wife of one jointly indicted with another was rejected as a witness, and the supreme court granted a new trial, saying: "Whether a reversal on this point will ultimately result in any advantage to the defendant, is not for us to judge; for, no matter how clear his guilt may be, or how deeply he may be stained with blood, it is our duty to see that he has the benefit of the law under which his punishment is demanded." Page 428. Other cases support the rule. *Stokes* v. *State,* 4 Bax. 47; *Hagan* v. *State,* 5 Bax. 615; *State* v. *Turner,* 6 Bax. 201. Hagan's case is also applicable on another point: that, after this testimony was rejected, it would have been improper to offer any

other proof of the marriage, wherefore the meagerness of that offered should not be accounted against the defendant on this motion. Perhaps this rule of the state courts is not binding on us here to govern our discretion in granting new trials. *Railroad Co.* v. *Horst*, 93 U. S. 291. But that is immaterial, for I am satisfied with it as the sound rule on the subject, whatever other courts may hold. For the same reason that it would be usurping the functions of the jury, and a practical denial of the defendant's right of trial by jury of all the facts entering as an element into her defence of marital coercion, I cannot now, I think, on this motion for a new trial, put her to the proof, by her own affidavit or otherwise, of the fact of marriage as a condition precedent to the grant of her motion. This might save the cost of another trial, and confirm my own suspicions of the falsity of her defence; but, after all, these suspicions are based on her refusal to plead in abatement her marriage, and she might well decline to be coerced by the court into filing a special plea, if she had a legal right to make the defence under the general issue. I am too strongly impressed with the necessity of preserving the right of trial by jury to assume its duties, even in a case like this, where I feel almost certain the defence is a false one.

Notwithstanding, then, the unfavorable character of the defence, and an almost certain conviction that the alleged marriage is a false pretence, I feel constrained, by the considerations I have mentioned, to grant a new trial, and it is so ordered.

NOTE. The defendant, on a second trial, was convicted, failing to prove marriage; but because on this trial it appeared that she was weak-minded, having been at one time, many years ago, confined in an asylum, and under the evil influence of Dr. Quilfeldt, she was, by the jury and the court, recommended to the president for his pardon.