## WALTER HOWARD v. STATE.

No. A-1524. Opinion Filed May 3, 1913.

(131 Pac. 1100.)

1. LARCENY—Principal and Accessory—Prosecution. (a) The fact that a person who is concerned in the commission of a felony may attempt to conceal or to aid another person who may also be concerned in the commission of such offense to escape from arrest will not make such person so aiding his codefendant an accessory, but he still will be liable to be tried and punished as a principal offender.

(b) For facts which do not show that a defendant who was charged with larceny should have been acquitted upon the ground that he was only the receiver of stolen goods, see opinion.

2. SAME—Evidence—Possession of Stolen Goods. The contemporaneous possession of recently stolen goods may be admitted in evidence for the purpose of throwing light upon a particular larceny for which a defendant was then upon trial.

3. SAME—Accusation—Allegation of Place. The right of possession as well as the right to the property remains at all times in the owner as a matter of law where property has been stolen in another state and brought into this state, and it may be alleged in an information or indictment that such larceny was committed in any town, or city, or county into or through which such stolen property had been brought.

(Syllabus by the Court.)

*Appeal from District Court, Washita County;*
*James R. Tolbert, Judge.*

Walter Howard was convicted of larceny of a horse, and he appeals. Affirmed.

It was proven that on the night of the 14th day of January, 1910, there were stolen from the ranch of W. E. Tandy in Roberts county, Tex., two horses and a saddle, the property of said Tandy. The animals were traced from Texas into Oklahoma. About 60 days after the theft some officers of Washita county, Okla., went to the house of Gus Howard in said county about 9 o'clock at night. Gus Howard was called to the door and informed that he was under arrest. He requested permission to go back in the house to dress himself before accompanying the officers. He also informed the officers that no other persons were present. The house was dark on the inside. The officers entered the house with Gus Howard. Some difficulty was experienced in getting a light. When the lamp was lighted, R. F. Graham and appellant covered the officers with their pistols, and forced them to permit themselves to be disarmed. Prior to this time the officers did not know that any one was present except Gus Howard. The officers informed appellant and Graham that they only desired to arrest Gus Howard, and requested to be permitted to take him and leave. But they were not allowed to do this by appellant and Graham. Graham and appellant held their pistols on the officers until they were dressed. They then marched the officers out of the house about 200 yards when Graham and appellant permitted the officers to return to the house. They then started off on foot. The officers returned to the house and remained there that night. They found on the premises of Gus Howard the two horses and the saddle stolen from Tandy, and also a considerable quantity of other stolen property. As soon as it was light the next day, the officers, having obtained blood hounds, took the trail of appellant and Graham, and followed them about 16½ miles to the house of Bob Howard. They there found appellant and Graham concealed in a well about 3½ feet square which had a plank covering. Appellant and Graham were armed with automatic pistols and a Winchester, and abundantly supplied with ammunition. After some persuasion and seeing that escape was impossible, appellant and Graham finally passed

their arms out, and came out of the well and surrendered.
It was also proven that Graham stated that he and appellant
had gotten together about the 1st of January, and that he,
Graham, had been at the house of appellant some time in Jan-
uary. The record fails to show that an exception was reserved
to this testimony. On the contrary, some of it was drawn out
by questions asked by counsel for appellant. Tandy testified
that he had never seen Graham until after the theft was com-
mitted, but that he had known appellant for two or three years,
that he had seen appellant in Canadian, Tex., a time or two,
and that some time in November prior to the theft of his horses
and saddle appellant said he had helped witness take a bunch
of cattle up the river.

Appellant did not testify in his own behalf, but produced a
number of witnesses who testified that they saw him in Roger
Mills county on the 14th day of January, 1910.

*Echols & Merrill,* for appellant.
*C. J. Davenport,* Asst. Atty. Gen., for the State.

FURMAN, J. (after stating the facts as above). First. It
is not claimed that appellant did not have a guilty connection
with the stolen property, but it is earnestly contended that the
evidence does not sustain a verdict for grand lanceny, but
that it makes out a case showing that appellant was merely
an accessory to the crime committed, or, at most, that he
was guilty of knowingly receiving stolen property. We cannot
agree with either of these contentions. Section 2046, Comp.
Laws 1909 (Rev. Laws, sec. 2135), with reference to accessories,
is as follows:

"All persons who, after the commission of any felony,
conceal or aid the offender, with knowledge that he has
committed a felony, and with intent that he may avoid or
escape from arrest, trial, conviction, or punishment, are acces-
sories."

The testimony in this case clearly shows that when the
appellant aided his codefendant, Graham, in escaping from

,the officers, he was not trying to aid and protect Graham any more than he was trying to aid and protect himself. It is impossible to explain his conduct on this occasion upon any other hypothesis than that he was as much a party to the crime as Graham was. In fact, at this time no charge was pending against either Graham or appellant. Gus Howard was then the only person the officers were after. The conduct of appellant therefore was not prompted by a desire to prevent the arrest of Graham, for no one then wanted to arrest him. His action cannot be considered other than as a tacit confession of his guilt. Therefore the law of accessory does not apply. There is no proof that appellant received the stolen property from Graham, or from any one else. All of the testimony points clearly to the conclusion that appellant and Graham were acting together as copartners in a general plan or scheme of theft. It is true that appellant did attempt to establish an alibi by proving that he was at home on the 14th day of January when the horses and the saddle were stolen, but his evidence on this subject is not different from that which could be produced by any thief on such an occasion, and the force of his testimony on this subject is entirely destroyed by his own conduct when found in possession of the stolen property. The proof is undisputed that appellant was acquainted with Tandy, and had been on Tandy's place in Texas, and claimed to have assisted Tandy in driving a bunch of cattle. There is no proof in the record that Graham was ever on Tandy's place, or ever in the state of Texas. The defense of knowingly receiving stolen property, if applicable to either of these defendants as against this information for larceny, could be made with a much greater showing of reason and justice in favor of Graham than in behalf of appellant. Where there is no question as to the guilt of an appellant, this court does not feel called upon to make nice hair-splitting distinctions as between different offenses. We are far more concerned in the enforcement of substantial justice, the punishment of criminals, and the suppression of crime in Oklahoma, and thereby protecting honest people in their prop-

erty and rights, than we are in establishing a fine-spun system of criminal jurisprudence.

Second. Over the objection and exception of appellant, the state was permitted to prove that three sets of harness, two saddles, three horses, a cook stove, and some clothing were found at Gus Howard's place in Washita county at the time when the arrest in this case was made, and it was proven without objection that this property was pointed out to the officers as belonging to appellant and his codefendant, Graham. It was also proven that all of this was stolen property. We think that evidence of these contemporaneous thefts and the contemporaneous possession of such other stolen property was competent. See *Davis v. State,* 7 Okla. Cr. 322, 123 Pac. 560. All of this evidence strongly tended to show that a partnership in crime, of which the larceny of the horses in question was a part, existed between appellant and Graham.

Third. The evidence shows that as a matter of fact the horses and saddle were stolen in Roberts county, Tex., and were brought into Washita county, Okla., while the information alleges that the property was stolen in Washita county, Okla. This was permissible under our statute. Section 2605, Comp. Laws 1909 (Rev. Laws, 2666), is as follows:

"Every person who steals the property of another in any other state or county, and brings the same into this state may be convicted and punished in the same manner as if such larceny had been committed in this state; and such larceny may be charged to have been committed in any town or city into or through which such stolen property has been brought."

Discussing this very question in the case of *Bivens v. State,* 6 Okla. Cr. 629, 120 Pac. 1037, Judge Doyle said:

"The right of possession, as well as the right of property, remained in the owner all the time as a matter of law, if the original taking and transportation of the property was under such circumstances as constituted a larceny."

The instructions in this case are open to criticism; but, owing to the conclusive character of the testimony, appellant could not have been injured thereby, for no honest and intelligent jury

could come to any other conclusion than that appellant had a guilty connection with the larceny of the property in question. To our minds it is plain that, if appellant was not the original thief, he was a party to the entire transaction, and was sharing in the fruits of the theft, and we are not willing to place a strained construction upon the law in order that Oklahoma may become a refuge or asylum for those who depredate upon the property of the people of an adjoining state. The reversal of this conviction would in our judgment amount to a miscarriage of justice.

The judgment of the lower court is in all things affirmed.

ARMSTRONG, P. J., and DOYLE, J., concur.