UNITED STATES of America
v.
Henrietta Mabel ANTHONY.
Cr. No. 12662.

United States District Court
M. D. Pennsylvania.
Sept. 14, 1956.

328

J. Julius Levy, U. S. Atty., Stephen Teller and Edwin M. Kosik, Asst. U. S. Attys., Scranton, Pa., for plaintiff.

Roger Mattes, Morey M. Myers, Edwin Utan, Scranton, Pa., for defendant.

JOHN W. MURPHY, Chief Judge.

Defendant, Henrietta Anthony, found guilty by a jury of: aiding and abetting attempted armed robbery of a national bank in this district, 18 U.S.C.A. § 2113; being an accessory after the fact to Linwood White, the principal offender, Id. § 3; conspiring with her husband and Linwood White to commit an offense against the United States, "to wit, to violate § 2113 * * * and § 3 * * * in violation of 18 U.S.C.A. § 371", moves in arrest of judgment, for judgment of acquittal and for a new trial.[1]

■ Defendant in arrest of judgment[2] contends that a husband and wife cannot conspire with each other. Although some cases, adhering to the fiction of

---

1. § 3, "Whoever, knowing that an offense against the United States has been committed, receives, relieves, comforts or assists the offender in order to hinder or prevent his apprehension, trial or punishment, is an accessory after the fact."

§ 371, "If two or more persons conspire * * * to commit any offense against the United States, * * * and one or more of such persons do any act to effect the object of the conspiracy, each shall be * * *." The modus operandi was outlined in eight overt acts. Three counts charged White as principal offender; separate counts charged defendant and her husband respectively as aider and abettor and as accessory after the fact. White plead guilty. Philip Anthony, found guilty, did not contest the verdict.

2. See Federal Rules of Criminal Procedure, Rule 7(c) and 34, 18 U.S.C.A. The indictment charges an offense over which the court has jurisdiction. As to the scope of review, see United States v. Caplan, D.C.W.D.Pa.1954, 123 F.Supp. 862, 863; personal jurisdiction, United States v. Rosenberg, 2 Cir., 1952, 195 F.2d 583, at page 603; United States v. Bazzell, 7 Cir., 1951, 187 F.2d 878, 882; venue, United States v. Cohen, 3 Cir., 1952, 197 F.2d 26, at page 28. All three were charged as conspirators. See United States v. Sager, 2 Cir., 1931, 49 F.2d 725, at page 728.

single entity, so hold: Dawson v. United States, 9 Cir., 1926, 10 F.2d 106; Gros v. United States, 9 Cir., 1943, 138 F.2d 261, 263, one judge dissenting; and dissenting opinion Ansley v. United States, 5 Cir., 1943, 135 F.2d 207, 208; United States v. Shaddix, D.C.S.D.Miss.1942, 43 F.Supp. 330; other cases, because of Married Woman's Emancipation Acts, finding the fiction obsolete, hold each spouse accountable: Johnson v. United States, 1946, 81 U.S.App.D.C. 254, 157 F.2d 209; Thompson v. United States, 5 Cir., 1955, 227 F.2d 671, 673, and see Ex Parte Estep, D.C.N.D.Tex.1955, 129 F.Supp. 557; 11 Am.Jur., Conspiracy, § 3; 15 C.J.S., Conspiracy, § 37; Vol. 2, Wigmore on Evidence, 3d Ed., §§ 600, 601; Id. Vol. 8, §§ 2227, 2228. All the cases supra hold the unity doctrine inapplicable, where as here there is a third party in the conspiracy.

■ Defendant next argues there cannot be a conspiracy to violate § 3, but no such conspiracy was charged. Defendants were charged with conspiracy to commit an offense against the United States in violation of § 371, one of the objects to violate § 3. The distinction is made clear in United States v. Hirsch, 1879, 100 U.S. 33, at page 34, 25 L.Ed. 539; Lisansky v. United States, 4 Cir., 1929, 31 F.2d 846, at page 849, 67 A.L.R. 67; United States v. Manton, 2 Cir., 1938, 107 F.2d 834, at page 839; United States v. Glasser, 7 Cir., 1940, 116 F.2d 690, 696; Hemans v. United States, 6 Cir., 1947, 163 F.2d 228, 234; May v. United States, 1949, 84 U.S.App.D.C. 233, 175 F.2d 994, at page 1002; Thomas v. United States, 8 Cir., 1907, 156 F. 897, at pages 900, 901; United States v. Burke, D.C.S.D.N.Y.1915, 221 F. 1014, 1015; Galatas v. United States, 8 Cir., 1935, 80 F.2d 15, at pages 17–18.

■ It has long been settled that conspiracy to commit a crime is a different offense from the crime that is the object of the conspiracy, Pereira v. United States, 1954, 347 U.S. 1, at page 11, 74 S.Ct. 358, 98 L.Ed. 435; American Tobacco Co. v. United States, 1946, 328 U.S. 781, at page 789, 66 S.Ct. 1125, 90 L.Ed. 1575; United States v. Rabinowich, 1915, 238 U.S. 78, at page 85, 35 S.Ct. 682, 59 L.Ed. 1211. It neither violates nor arises under the statute, the violation of which is its object. Braverman v. United States, 317 U.S. 49, at page 54, 63 S.Ct. 99, 87 L.Ed. 23. "The conspiracy is the crime, and that is one, however diverse its objects." Frohwerk v. United States, 1919, 249 U.S. 204, 210, 39 S.Ct. 249, 252, 63 L.Ed. 561; Pinkerton v. United States, 1946, 328 U.S. 640, 643, 66 S.Ct. 1180, 90 L.Ed. 1489. It does not matter whether any of the objects be attained or not. Williamson v. United States, 1908, 207 U.S. 425, at page 447, 28 S.Ct. 163, 52 L.Ed. 278; United States v. Manton, supra, 107 F.2d at 838. The gist of the crime of conspiracy is the agreement or confederation of minds. That is what is punishable. § 371 requires that there be an overt act taken by at least one of the conspirators in pursuance of the agreement to effect the object of the conspiracy. Marino v. United States, 9 Cir., 1937, 91 F.2d 691, at pages 694, 695, 113 A.L.R. 975. Such overt act need not itself be a crime; still less need it be the very crime that is the object of the conspiracy. United States v. Holte, 1915, 236 U.S. 140, at page 144, 35 S.Ct. 271, 59 L.Ed. 504. The necessity for an overt act has been variously described. Braverman v. United States, supra, 317 U.S. at page 53, 63 S.Ct. at page 101; Vannata v. United States, 2 Cir., 289 F. 424, at page 426, usually to afford a locus penitentiae to one or all before the act is done to abandon the scheme and avoid the punishment prescribed by the statute. See United States v. Britton, 108 U.S. 199, 204, 205, 2 S.Ct. 531, 27 L.Ed. 698; United States v. Manton, supra, Id.

■ Liability for conspiracy is not taken away by its success, i.e., by the accomplishment of the substantive offense at which the conspiracy aimed. Heike v. United States, 1913, 227 U.S. 131, at page 144, 33 S.Ct. 226, 57 L.Ed.

450, Ann.Cas.1914C, 128. As a general rule the same overt acts charged in the conspiracy may also be charged and proved as substantive offenses and separately punished. United States v. Bayer, 1947, 331 U.S. 532, at page 542, 67 S.Ct. 1394, 91 L.Ed. 1654; Pinkerton v. United States, supra, 328 U.S. at page 644, 66 S.Ct. at page 1182; Sneed v. United States, 5 Cir., 1924, 298 F. 911, at page 913, 37 A.L.R. 772, at page 775. As to aiding and abetting, see Nye & Nissen v. United States, 1949, 336 U.S. 613, at pages 618, 620, 69 S. Ct. 766, 93 L.Ed. 919. The common law rule that the substantive offense, if a felony, merges in the conspiracy has little vitality in this country. Pinkerton v. United States, supra, 328 U.S. at page 643, 66 S.Ct. at page 1181, and see Com. v. Corcoran, 1922, 78 Pa.Super. 430, at pages 433, 435.

"There are * * * instances where a conspiracy charge may not be added to the substantive charge. One is where the agreement of two persons is necessary for the completion of the substantive crime and there is no ingredient in the conspiracy which is not present in the completed crime. * * *[3] But those exceptions are of a limited character." Pinkerton v. United States, supra, 328 U.S. at page 643, 66 S.Ct. at page 1182. "* * * 'The principle is confined within very narrow limits.'" Lisansky v. United States, supra, 31 F.2d at pages 848, 849, and see Old Monastery Co. v. United States, 4 Cir., 1945, 147 F.2d 905, at page 907. Although recognized many times the doctrine has been applied in comparatively few instances.[4] People v. Wettengel, 98 Colo. 193, 58 P.2d 279, 104 A.L.R. at page 1431.

**3.** Another where the definition of the substantive offense excludes from punishment for conspiracy one who voluntarily participates in another's crime. Id. citing Gebardi v. United States, 1932, 287 U.S. 112, at pages 119–122, 53 S.Ct. 35, 77 L.Ed. 206, 84 A.L.R. 370.

**4.** See United States v. Holte, 1915, 236 U.S. 140, at page 145, 35 S.Ct. 271, at page 273, 59 L.Ed. 504, L.R.A.1915D, 281, "* * * impossible to turn the concurrence necessary to effect certain crimes such as bigamy or duelling into a conspiracy to commit them * * *"; United States v. Katz, 1926, 271 U.S. 354, at page 355, 46 S.Ct. 513, 70 L. Ed. 986; Gebardi v. United States, supra [287 U.S. 112, 53 S.Ct. 37], "* * * where it is impossible under any circumstances to commit the substantive offense without co-operative action, the preliminary agreement between the same parties to commit the offense is not an indictable conspiracy either at common law * * *, or under the federal statute." United States v. Katz, D.C. E.D.Pa.1925, 5 F.2d 527, at page 528; Norris v. United States, 3 Cir., 1929, 34 F.2d 839, at page 841; United States v. Zeuli, 2 Cir., 1943, 137 F.2d 845; People v. Purcell, 1940, 304 Ill.App. 215, 26 N.E.2d 153; Shannon v. Com., 14 Pa. 226. Wharton, Criminal Law, 12th Ed., § 1604, "When to the idea of an offense plurality of agents is logically necessary, conspiracy, which assumes the voluntary accession of a person to a crime

of such a character that it is aggravated by a plurality of agents, cannot be maintained"; Notes 11 A.L.R. 196; 104 A.L. R. 1431; Lisansky v. United States, supra, 31 F.2d, at page 848, "* * * where a crime is such that concert of action between two or more persons is logically necessary to its completion, a charge of conspiracy to commit it will not lie against such persons". 11 Am.Jur. Conspiracy, § 20, "The conspiracy is deemed to be merged into the substantive offense, or, at least, is such an integral part of it that the two cannot be considered as separate offenses * *. In several Federal cases the contention has been made that the general principle should apply prohibiting a charge of conspiracy to commit an offense which requires the concerted action of the parties. However, the contention has usually been overruled on the ground either that the particular offense did not require concert of action or that parties other than the immediate parties to the offense were engaged in the conspiracy * * *" 15 C.J.S., Conspiracy, § 47, p. 1073 et seq.

Doctrine approved but not applied: United States v. Katz; Gebardi v. United States; United States v. Zeuli, supra. Doctrine applied: United States v. Dietrich, C.C.D.Neb.1904, 126 F. 664, at pages 666, 667, bribery; United States v. New York Cent. & H. R. R. Co., C.C. S.N.Y.1906, 146 F. 298, at pages 299, 303–305, unlawful rebates; United States v. Sager, 2 Cir., 1931, 49 F.2d 725, 727,

Section 3 can be violated by a single individual. Section 371 requires two or more persons—here there were three. Violation and proof thereof contain ingredients not present in the completed crime. A conspiracy has ingredients, as well as implications, distinct from the completion of the unlawful project. Pinkerton v. United States, supra, 328 U.S. at pages 644, 649, 66 S.Ct. at pages 1182, 1185; United States v. Rabinowich, supra, 238 U.S. at page 88, 35 S.Ct. at page 684; Sneed v. United States, supra, 298 F. at page 913; Nye & Nissen v. United States, supra, 336 U.S. at pages 620, 630, 69 S.Ct. at pages 770, 775;

Pereira v. United States, supra, 347 U.S. 9, 11, 12, 74 S.Ct. 363, 364; Krulewitch v. United States, 1949, 336 U.S. 440, at page 450, 69 S.Ct. 716, 93 L.Ed. 790. The conspiracy doctrine will incriminate persons on the fringe of offending who would not be guilty of aiding and abetting, or of becoming an accessory, for those charges only lie where an act which is a crime has already been committed. See Id. as to attempts. Since the substantive offenses could be committed by one person and there are ingredients in the conspiracy not present in the completed crime, the exception does not apply.[5]

bribery; but cf. Morgan v. Devine, 1915, 237 U.S. 632, at page 641, 35 S.Ct. 712, 59 L.Ed. 1153; Norris v. United States, supra, 34 F.2d at page 841; United States v. Hagan, D.C.W.D.Ky., 1939, 27 F.Supp. 814, X with T and M to conceal and harbor T and M; and see Com. v. Maxberry, 1930, 13 Pa.Dist. & Co. R. 371. But see Helsel v. United States, 4 Cir., 1947, 165 F.2d 73; Rutledge v. United States, 8 Cir., 1948, 168 F.2d 776; and see Hemans v. United States, supra, 163 F.2d at page 234; United States v. Glasser, supra, 116 F.2d at page 696; United States v. Manton, supra, 107 F. 2d 839; Lisansky v. United States, supra, 31 F.2d at page 849; Slade v. United States, 10 Cir., 1936, 85 F.2d 786, at pages 787, 788.

Doctrine held inapplicable: (1) substantive crime could be committed by single individual. Chadwick v. United States, 6 Cir., 1905, 141 F. 225, at page 236; Laughter v. United States, 6 Cir., 1919, 259 F. 94, at page 97; Robilio v. United States, 6 Cir., 1923, 291 F. 975, at page 979; Curtis v. United States, 10 Cir., 1933, 67 F.2d 943, at page 947; United States v. Grand Tr. R. Co., D.C. 1915, 225 F. 283, 285, 286; Lisansky v. United States, supra, 31 F.2d at page 848; *United States v. Shevlin, D. C.Mass.1913, 212 F. 343, at pages 344, 345; United States v. Burke, supra, 221 F. at pages 1014, 1015; May v. United States, supra, 175 F.2d at page 1003; Freeman v. United States, 6 Cir., 1945, 146 F.2d 978; United States v. Winters, 2 Cir., 1946, 158 F.2d 674; United States v. Cordo, 2 Cir., 1951, 186 F.2d 144, at page 147; United States v. Coplon, D.C. S.D.N.Y.1949, 88 F.Supp. 910; United States v. Albanese, D.C.S.D.N.Y.1954, 123 F.Supp. 732, at page 734; United States v. Klock, 2 Cir., 1954, 210 F.2d

217, at page 224; (2) conspiracy contemplated cooperation of more persons than were necessary to commit the substantive offense. Thomas v. United States, supra, 156 F. at pages 903, 905; McKnight v. United States, 8 Cir., 1918, 252 F. 687, at page 689; O'Leary v. United States, 7 Cir., 1931, 53 F.2d 956, bribery; Old Monastery Co. v. United States, supra, 147 F.2d 907, at page 908, *illegal sale; Vannata v. United States, supra, 289 F. at page 427; *United States v. Lutwak, 7 Cir., 1952, 195 F.2d 748, at page 755; United States v. Center Veal & Beef Co., 2 Cir., 1947, 162 F. 2d 766, at page 770; United States v. Rubinstein, 2 Cir., 1948, 166 F.2d 249, at pages 255–256; United States v. Smolin, 2 Cir., 1950, 182 F.2d 782, 786; United States v. Clark, D.C.W.D.Mo. 1908, 164 F. 75, at page 77; United States v. Wray, D.C.1925, 8 F.2d 429.

\* a good discussion.

5. As to double jeopardy, identical offenses and similarity of evidence, see Pinkerton v. United States, supra, 328 U.S. at page 644, 66 S.Ct. at page 1182; Pereira v. United States, supra, 347 U.S. at page 9, 74 S.Ct. at page 363; United States v. Curzio, 3 Cir., 1948, 170 F.2d 354, at page 355; United States v. Bazzell, supra, 187 F.2d at pages 884, 885; Burton v. United States, 1906, 202 U.S. 344, at pages 377, 380–381, 26 S.Ct. 688, 50 L.Ed. 1057, 6 Ann.Cas. 362; Blockburger v. United States, 284 U.S. 299, at page 304, 52 S.Ct. 180, 76 L.Ed. 306. The power of Congress to separate the two offenses and affix a different penalty is well established. Pinkerton v. United States, supra, 328 U.S. at page 643, 66 S.Ct. at page 1181; Burton v. United States, supra, 202 U.S. at page 380, 26 S.Ct. at page 698.

As to the motion for judgment of acquittal:[6] Viewing the evidence and all inferences reasonably deducible therefrom in the light most favorable to the government, there was substantial, competent evidence that about September 1, 1955, in Newark, New Jersey, defendant, her husband, and White, a frequent visitor, decided to solve their financial difficulties by holdups. With money earned by defendant they purchased an automobile in White's name, and prepared a special panel therein for hiding purposes. September 6 while the Anthonys waited nearby White purchased a twelve gauge double barrel shotgun and a box of shells. That evening in Anthony's kitchen, to increase the shot spread, White sawed off a portion of the barrels and stock; Philip Anthony smoothed the muzzle edges and, with defendant's cooperation and consent, the gun was put in the bedroom for future use.

Sunday night, September 11, 1955, failing to find a likely spot locally for a holdup, all three defendants decided upon going to Wyalusing, Pennsylvania. Philip Anthony drew a map charting their course. White wore a khaki cap, a G. I. jacket bearing sergeant's stripes and carried an Army duffle bag containing the gun, box of shells, two four-foot leather thongs, and an extra pair of shoes, rubber soled canvas, for White's later use. When they were about to leave White suggested defendant should not go. Defendant insisted upon going along, refusing permission for her husband to go unless she went too.

Next morning while the Anthonys waited nearby, White went into the Wyalusing bank, got a blank deposit slip, and returned stating the bank was too crowded. All three defendants decided to try another place. White later went to the bank in Ulster, got a deposit slip and saw only two employees there. Upon his return all three defendants decided that was the place to rob. With his ballpoint pen Philip Anthony printed on the deposit slip "This Is a Holdup" and handed it to White. After parking the car on a dirt road, while the Anthonys waited in the getaway car, White, wearing the rubber soled sneakers, left the car with the loaded gun concealed in the duffle bag. He then entered the bank, threw the deposit slip at Tillie McKee, a bank teller, announced "This is a holdup" and pointed the gun at a level with her eyes. She fell to the floor and touched off the burglar alarm. Inside, White again pointed the gun at her, shoved her to one side as she attempted to get up, opened a drawer, and finding it empty asked where they kept the money. She answered, "in the back room." White tried to get at the money through a door which the cashier had just locked. After attempting unsuccessfully to open the door, hearing the burglar alarm ringing, White put the gun into the duffle bag and left the bank. Outside he threatened to shoot a young man if he tried to follow him. As soon as he heard the alarm, Philip Anthony started the motor, about to depart. White, excited and nervous, waved them to go on without him. Philip started away but stopped when defendant insisted that they should not leave without White.

Up the road a bit, White, who had been running alongside the car with gun in hand, got into the car and through the special panel into the trunk. Defendant went to the rear and locked the trunk. Philip Anthony then drove on. Pennsylvania and New York State Police were immediately alerted.

Shortly thereafter a Pennsylvania trooper asked if they had seen a colored man on foot; defendant answered "no". Later when an officer, unable to open the

6. See United States v. Stoehr, D.C.M.D. Pa.1951, 100 F.Supp. 143, at page 149, affirmed 3 Cir., 196 F.2d 276, 33 A.L.R.2d 836, certiorari denied, 344 U.S. 826, 73 S.Ct. 28, 97 L.Ed. 643; United States v. Weinberg, D.C., 129 F.Supp. 514, at page 516. Objection to denial of the previous motion was waived by defendant's offering evidence on her own behalf, Id., and see Id. as to bolstering the prosecution's case.

trunk, asked for a key, although defendant had the key on her person she remained silent while her husband in her presence and hearing told the officer that the owner lost the key. Defendant told the officer her husband had a heart condition and couldn't stand too much excitement. Ordered to return to Ulster, Philip Anthony drove and parked the car near the bank and waited while police officers conferred nearby. Later when advised that a car resembling theirs was involved in a holdup, they remained silent.

After reaching New York state, defendant, using the key, let White out of the trunk. He then disposed of the sergeant's jacket while defendant threw the key of the trunk away.

At Horseheads, New York, the Anthonys were indignant when questioned by a trooper, saying that they were being treated like criminals, Philip stating they were just tourists out for a ride. Defendant, quite concerned about her husband's welfare, requested that he be permitted to sit down because of his heart condition. The trooper got him a chair. Upon the officers finding the Wyalusing deposit slip on White's person, being unable to find the sawed off shotgun, all three defendants were brought to the police station. After talking further to Philip the officers pried open the trunk and found the duffle bag, gun, shells and leather thongs. On the way to the police station defendant made misleading and deceptive statements. After their arrival each defendant voluntarily made a statement as to their respective parts in their offenses.

From the foregoing it is evident that all three defendants were an integral part of the conspiracy from beginning to end. There was abundant evidence as to defendant's receiving and assisting White and endeavoring to hinder and prevent his apprehension. Such conduct was anti-social and is condemned by law.

As to the motion for a new trial:[7] Over objection we permitted a trooper to relate that he had been advised of the attempted holdup by police radio, to lay a proper basis for questioning defendants. Defendants in their written statements and testimony covered the same subject matter. Harrod v. United States, 58 App.D.C. 254, 29 F. 2d 454, at page 455. See Henry Pa. Evidence, 1953 Ed., § 441, p. 435, "* * * if the question is whether a person acted in good faith and with reasonable cause, the information on which he acted is competent evidence even though it consists of declarations made by third persons, and regardless of whether such declarations were in fact true or false." Com. v. Storey, 1912, 49 Pa.Super. 282, at page 299; Com. v. Major, 1901, 198 Pa. 290, at page 298, 47 A. 741; see VI Wigmore, 3d Ed., § 1766; Terry v. United States, 4 Cir., 1931, 51 F.2d 49, at pages 52, 53; Wagner v. Wagner, 1945, 158 Pa.Super. 93, at page 97, 43 A.2d 912.

Questions asked as to the whereabouts of other troopers to account for their absence at the trial, see Gentili v. United States, 9 Cir., 1927, 22 F.2d 67, at page 69, called for the witness' knowledge not hearsay. To the answer, "I think he is in the hospital * * *" no objection was made and was therefore waived. See 20 Am.Jur. Evidence, § 768, p. 639; Henry op.cit. supra, § 441, p. 436; Poluski v. Glen Alden Coal Co., 1926, 286 Pa. 473, 133 A. 819. No attempt was made to explore the witness' knowledge. Cf. Henry, § 531, p. 526, with United States v.

7. A supplemental motion for a new trial was filed out of time without previous petition to and order by the court within the five day period. See and cf. Rule 33, 45(b), United States v. Smith, 1947, 331 U.S. 469, at pages 475, 476, 67 S. Ct. 1330, 91 L.Ed. 1610; Bruno v. United

States, 1950, 86 U.S.App.D.C. 118, 180 F.2d 393, at page 394; Marion v. United States, 9 Cir., 1948, 171 F.2d 185; United States v. Bloom, 2 Cir., 1947, 164 F.2d 556; Lujan v. United States, 10 Cir., 1953, 204 F.2d 171, at page 172.

Stoehr, D.C., 100 F.Supp. 143, at page 156.

A trooper described defendant's husband as very calm; defendant as "just about hysterical worrying about his health" on the way to the police station. When a trooper said several times in the presence and hearing of defendant and her husband, "You were the ones who committed the robbery; how can you deny it?", both defendants remained silent.

Twice defendant said, "Why do you bother us? We were cleared in Pennsylvania." Just before they got to the police station, Philip Anthony looked at his wife and said, "There's no use fighting it. We did it." Defendant said, "No, no, no." The trooper testified there was no denial. The government contended defendant meant thereby to admonish her husband to be quiet and make no further admissions. Cf. Price v. United States, 6 Cir., 1925, 5 F. 2d 650. On cross examination defendant denied hearing the accusation or her husband making any such admission; denied saying "no, no, no"; later she said she did not remember the occasion, that she was then in a state of shock.

■ Exculpatory statements made upon interrogation with intent to divert suspicion or mislead the police, when shown to be false, are circumstantial evidence of guilty consciousness and have independent probative force. United States v. Smolin, 2 Cir., 1950, 182 F.2d 782, 786; 2 Wigmore on Evidence, § 278; Com. v. Bolish, 1955, 381 Pa. 500, at page 524, 113 A.2d 464; Com. v. Lowry, 1953, 374 Pa. 594, at page 601, 98 A.2d 733; McMeen v. Com., 1886, 114 Pa. 300, at pages 306, 307, 9 A. 878; as to defendant's demeanor and conduct when taken into custody, see Com. v. Vallone, 1943, 347 Pa. 419, at page 421, 32 A.2d 889; Com. v. Shupp, 1950, 365 Pa. 439, at page 450, 75 A.2d 587; and see Com. v. Homeyer, 1953, 373 Pa. 150, at page 159, 94 A.2d 743,

at page 747, as to "manifestations of mental distress".

■ Declarations incriminating in character made in the presence and hearing of a defendant under such circumstances as would warrant the inference that she would naturally have contradicted them if she did not assent to their truth is admissible. Sparf and Hansen v. United States, 1895, 156 U.S. 51, at page 56, 15 S.Ct. 273, 39 L.Ed. 343; Dickerson v. United States, D.C.Cir., 1933, 62 App.D.C. 191, 65 F.2d 824, at page 826. Com. v. Vallone, supra, 347 Pa. at pages 421, 422, 32 A.2d at page 890; Wharton Criminal Evidence, 12th Ed., § 405.

■ The accusatory statement, being hearsay, is not admissible as evidence in itself of the facts which it asserts, but merely to show what the charges were to which defendant offered no denial. Its probative force is derived not from the credibility of the accuser, but from the silence of the accused in response to it. Com. v. Vallone, supra, 347 Pa. at page 421, 32 A.2d at page 890. " * * * when statements are made by the wife in the husband's presence (here vice versa) under such circumstances that his silence would be equivalent to an admission of their truth (ante § 1071) the statements are receivable, as would be those of any other person; for they are not offered as hers, but as his by assent and adoption; provided, of course, that third persons were present * * *" [8] 8 Wigmore, § 2232(2). See and cf. Wolfle v. United States, 1934, 291 U.S. 7, at page 14, 54 S.Ct. 279, 78 L.Ed. 617; Pereira v. United States, supra, 347 U.S. at page 6, 74 S.Ct. at page 361. See Wigmore, Id. § 1071 at page 74, " * * * the burden is in practice generally left upon the proponent to show that the requisite conditions existed, though the middle course is sometimes taken of leaving the question to the jury." Com. v. Vallone, supra, 347 Pa. at page 422, 32 A.

8. Thompson v. United States, 5 Cir., 1955, 227 F.2d 671, did not reach the question and is not to the contrary.

2d at page 890. The circumstances under which it was received are important for the consideration of the jury in determining the weight to be given to the defendant's silence under accusation, but they do not impair the admissibility of the evidence. " 'It is clear that no particular conduct or acquiescence can be classed as constituting a proper or improper admission, and hence it is practically impossible for a court to charge, as a matter of law, what conduct or acquiescence constitutes, or does not constitute, an admission. It is equally clear that the jury must pass upon the question, as a matter of fact, to determine its credibility, as in all other cases of circumstantial evidence'. Wharton's Criminal Evidence, 11th Ed., § 665, p. 1107." Com. v. Vallone, supra, 347 Pa. at page 424, 32 A.2d at page 891. So too as to whether or not there was a denial. See United States v. Stoehr, supra, 100 F. Supp. at page 163; Com. v. Brown, 1919, 264 Pa. 85, at page 92, 107 A. 676; Com. v. Detweiler, 1910, 229 Pa. 304, at page 310, 78 A. 271.

■ If the defendant denied the charge it was clearly not admissible as an admission. We instructed the jury that if defendant in fact said, "no, no, no" to disregard the evidence so far as defendant was concerned, albeit it would be admissible under other headings, i.e., conduct and demeanor, after being taken into custody; exculpatory statements. Cf. Com. v. Sydlosky, 1931, 305 Pa. 406, at page 411, 158 A. 154; Com. v. Bolish, supra, 381 Pa. at page 525, 113 A.2d at page 477.

As agents of the Federal Bureau of Investigation began to interview defendant she was emotionally upset, somewhat hostile and concerned over her husband's health and welfare so much that in response to each question she reverted to that problem. When upon her request her husband was brought in and talked to her, her concern was relieved, her emotional state somewhat straightened out. After he suggested to her that since he had made the statement she had better tell the truth, defendant gave and signed a statement as to her part in the whole affair. The officers testified that before the statement was made defendant was advised of her rights; that the statement was given voluntarily of her own free will without threats, force, coercion, promises or inducements. The only objection to admitting the statement was that it was untrustworthy because of defendant's emotional state, the atmosphere in which it was given, and that permitting her to see and talk to her husband was a reward and an inducement precluding admissibility. We admitted the statement advising the jury to consider it and, if it was not given voluntarily of her own free will, to reject it; otherwise to give it such weight as in their judgment it was entitled to under the circumstances, including inter alia defendant's condition at the time.

■ Was there any inducement and, if so, was it such that there was any fair risk of a false statement? We think not. See 3 Wigmore on Evidence, 3d Ed., § 822, p. 246. The true test of admissibility is whether the statement was made freely, voluntarily, and without compulsion or inducement of any sort. Wilson v. United States, 162 U.S. 613, at page 623, 16 S.Ct. 895, 40 L.Ed. 1090; United States v. Carignan, 1951, 342 U.S. 36, at page 41, 72 S.Ct. 97, 96 L.Ed. 48. "Whether * * * at the time he confesses [he] * * * is in possession of 'mental freedom' to confess to or deny * * *." Lyons v. State of Oklahoma, 1944, 322 U.S. 596, at page 602, 64 S.Ct. 1208, at page 1212, 88 L.Ed. 1481. The fact that defendant was in custody, emotionally upset, that her husband advised her to tell the truth, that his visit and talk with defendant improved her emotional state, are circumstances to be considered in determining the weight to be given to the testimony and its credibility. Wilson v. United States, Id.; 2 Wharton's Criminal Evidence, 12th Ed., § 386; Sparf and Hansen v. United States, supra, 156 U.S. at page 55, 15 S.Ct. at page 275; Com. v. Spardute, 1923, 278 Pa. 37, at

page 48, 122 A. 161; Com. v. Smith, 1953, 374 Pa. 220, at page 233, 97 A.2d 25; Com. v. Bryant, 1951, 367 Pa. 135, at page 150, 79 A.2d 193, and see Lyons v. State of Oklahoma, supra, 322 U.S. at page 602, 64 S.Ct. at page 1212.

█ "When there is a conflict of evidence as to whether a confession is or is not voluntary, if the court decides that it is admissible, the question may be left to the jury, with the direction that they should reject the confession if, upon the whole evidence, they are satisfied it is not the voluntary act of the defendant." Wilson v. United States, supra, 162 U. S. at page 624, 16 S.Ct. at page 900; Com. v. Spardute, supra, 278 Pa. at page 48, 122 A. 161; Com. v. Jones, 1941, 341 Pa. 541, at page 548, 19 A.2d 389; Lyons v. State of Oklahoma, supra, 322 U.S. at page 603, 64 S.Ct. at page 1212; 2 Wharton's Criminal Evidence, § 351, p. 41, and see 3 Wigmore, 3d Ed., §§ 832, 835, 853, 861.

As to the statement itself as evidence of defendant's state of mind, see Lyons v. State of Oklahoma, supra, 322 U.S. at page 599, 64 S.Ct. at page 1211.

█ We denied defendant's request to delete from her husband's statement, "However, my wife objected and I sat there awaiting developments. My wife influenced me in waiting stating we could not leave White * * *", because it tended to show his state of mind when the bank alarm sounded, his knowledge at the time, and intended flight. Other parts of the statement of the same purport would supply the deficiency created by the deletion. Defendant's statement and testimony were substantially to the same effect. The jury was instructed that the testimony bound only the husband. See Blumenthal v. United States, 332 U.S. 539, at pages 552–553, 559, 68 S.Ct. 248, 92 L.Ed. 154; Skiskowski v. United States, 1946, 81 U.S. App.D.C. 274, 158 F.2d 177, at page 180.

█ . In a pre-trial memorandum opinion we denied defendant's request to examine all statements made by herself and the other two defendants; in ac-

cord see United States v. Kiamie, D.C. S.D.N.Y., 18 F.R.D. 421. All such statements were made available for proper use by defense counsel at the trial itself.

█ A request to interrupt the direct testimony of Philip Anthony so that defense counsel could call defendant's father and sister to testify that defendants visited defendant's father's home near Poughkeepsie, New York, at unusually late hours during the summer, to show there was nothing unusual about the time of departure in the present instance, was denied. If true it had little relevancy to the subject at hand. However, to accommodate counsel and the witnesses the government stipulated that if called they would so testify. There was no valid reason for not calling them in the proper order. See United States v. Stoehr, supra, 100 F.Supp., at pages 152, 154, 159, 161.

█ A ballpoint pen produced in court had the same color ink as was used to write "This is a holdup" on the deposit slip. Philip Anthony did not remember exactly the kind of pen he had but said the pen in court looked familiar. On the government's side the officer in court could not identify it and it was not pressed as an exhibit. They did not later press the offer. See United States v. Bazzell, supra, 187 F.2d at page 886. In our charge we inadvertently referred to the pen with other exhibits but immediately set it to one side. United States v. Rooth, 2 Cir., 1947, 159 F.2d 659, at page 660; Nash v. United States, 2 Cir., 1932, 54 F.2d 1006.

██ The leather thongs were apparently freshly cut. On cross examination defendant was asked whether they were to be used to tie up somebody. The exhibit and their possible use was called to the jurors' attention. "It is a primary duty of the trial judge—a duty that must never be ignored—in charging a jury to clarify the issues so that the jury may comprehend the questions they are to decide." Sears v. Birbeck, 321 Pa. 375, at page 383, 184 A. 6, at page 10; United States v. Stoehr, supra, Id.;

Simmons v. United States, 1891, 142 U.S. 148, at page 155, 12 S.Ct. 171, 35 L.Ed. 968; United States v. Philadelphia & R. R. Co., 1887, 123 U.S. 113, at page 114, 8 S.Ct. 77, 31 L.Ed. 138; Allis v. United States, 1894, 155 U.S. 117, at page 122, 15 S.Ct. 36, 39 L.Ed. 91.

Rule 30, F.R.Cr.P. requires that counsel be afforded opportunity to object to the charge of the court out of the hearing of the jury. See Lovely v. United States, 4 Cir., 1948, 169 F.2d 386, at page 391, "Ordinarily, failure to observe the requirements of this rule will be held sufficient ground for granting a new trial, unless it affirmatively appears that no prejudice resulted therefrom; for counsel should not be required in the presence of the jury to place themselves in the attitude of apparent antagonism to the trial judge which is involved in excepting to the charge." The rule was not violated here. Cf. Blumenthal v. United States, supra, 332 U.S. at page 551, 68 S.Ct. at page 253.

We granted defense counsel's request to strike off their rest to enable them to show that White had pleaded guilty to all counts with which he was charged. Having opened the issue defense counsel wanted it closed without affording government's counsel an opportunity to be heard. We asked the government counsel for their position and they agreed requesting that it be made abundantly clear that such plea in no manner affected the defendant on trial; that defendant Anthony's guilt must be proved independently by the evidence. The court agreed and later so charged. See Babb v. United States, 5 Cir., 1955, 218 F.2d 538, at page 541; Barone v. United States, 8 Cir., 1953, 205 F.2d 909, at page 914. Defendant's points were thereafter offered, discussed and ruled upon out of the hearing of the jury.

As to the charge on circumstantial evidence,[9] see Holland v. United States, 1954, 348 U.S. 121, at pages 139, 140, 75 S.Ct. 127, 99 L.Ed. 150; United States v. Dolasco, 3 Cir., 1950, 184 F.2d 746, 748; United States v. Austin-Bagley Corp., 2 Cir., 1929, 31 F.2d 229, 234; United States v. Valenti, 2 Cir., 1943, 134 F.2d 362, 364; McCoy v. United States, 9 Cir., 1948, 169 F.2d 776, at page 784, and see Wigmore, op.cit. supra, § 26; Com. v. Marino, 1940, 142 Pa. Super. 327, at page 333, 16 A.2d 314; Com. v. Meyers, 1943, 154 Pa.Super. 8, 34 A.2d 916; Com. v. Libonati, 1943, 346 Pa. 504, at page 508, 31 A.2d 95; Com. v. Holt, 350 Pa. 375, at page 387, and see page 397, 39 A.2d 372; Com. v. Bausewine, 354 Pa. 35, at page 41, 46 A.2d 491. Here some of the evidence was direct. See United States v. Stoehr, supra, 100 F.Supp. at page 163, and McCoy v. United States, supra, Id. The question left open in United States v. Dolasco, supra, was decided in Holland v. United States, supra. We charged the jury that a conviction may be had on circumstantial evidence only when the facts and circumstances proved clearly exclude every reasonable hypothesis but that of guilt. In view of developments in this branch of the law, defendant was given a more favorable charge in this respect than she was entitled to. See United States v. Quick, 3 Cir., 1942, 128 F.2d 832.

As to the distinction between aiding and abetting and accessory after the fact and the possibility of defendant being found guilty of both charges, see and cf. 18 U.S.C.A. § 2, and Id. § 3. One who aids and abets another to commit a crime is guilty as a principal. Bozza v. United States, 1947, 330 U.S. 160, at page 164, 67 S.Ct. 645, 91 L.Ed. 818; United States v. Caplan, supra, 123 F.Supp. at page 865. "In order to aid and abet another to commit a crime it is necessary that a defendant 'in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed.' L. Hand J., in United States v. Peoni, 2 Cir., 100 F.2d 401, 402."

---

9. Apart from defense counsel's failure to comply with Rules 30 and 33.

Nye & Nissen v. United States, supra, 336 U.S. at page 619, 69 S.Ct. at page 769. "Aiding and abetting * * * states a rule of criminal responsibility for acts which one assists another in performing." Id. 336 U.S. at page 620, 69 S.Ct. at page 770. "Aiding and abetting means to assist the perpetrator of the crime." United States v. Williams, 341 U.S. 58, at page 64, 71 S.Ct. 595, at page 599, 95 L.Ed. 747; Pereira v. United States, supra, 347 U.S. at page 11, 74 S.Ct. at page 364, "* * * consciously shares in a criminal act * * *." The least degree of concert or collusion is sufficient. Com. v. Lowry, 1953, 374 Pa. 594, at page 600, 98 A.2d 733. The charge lies only when the crime—here an attempt—has actually been committed. Krulewitch v. United States, supra, 336 U.S. at page 450, 69 S.Ct. 716. In our charge we read § 2113(a) (d), Count 5, charging defendant with aiding and abetting White in attempted armed robbery of a national bank, and outlined the evidence which made it abundantly clear that the defendant associated herself with the venture as something she wished to bring about, and sought by her action to make it succeed. We instructed the jury that before they could find defendant guilty they must find the requisite act and intent [10] to help the cause along, and that the defendant acted in a material way to aid White to attempt to rob the bank. Many times elaboration makes a matter less clear. See Perovich v. United States, 1907, 205 U.S. 86, at page 92, 27 S.Ct. 456, 51 L.Ed. 722; Spalitto v. United States, 8 Cir., 1930, 39 F.2d 782, at page 788; Com. v. Habecker, 1934, 113 Pa.Super. 335, at pages 340, 341, 173 A. 831.

Congress in § 2 for all practical purposes removed the distinction between accessory before the fact and principal; see Colosacco v. United States, 10 Cir., 1952, 196 F.2d 165, at page 167; United States v. Carengella, 7 Cir., 1952, 198 F.2d 3, at pages 6–7; Von Patzoll v. United States, 1947, 10 Cir., 163 F.2d 216, at pages 218, 219, and cf. Madigan v. United States, 8 Cir., 1927, 23 F.2d 180; United States v. McCarthy, 2 Cir., 1948, 170 F.2d 267, 268. See however Aaronson v. United States, 4 Cir., 1949, 175 F.2d 41, as to the application of the rule, a case particularly apposite to the present situation.

Section 3, accessory after the fact, however remained intact. See Morei v. United States, 6 Cir., 1942, 127 F.2d 827, at page 830. Section 2 covers acts in the commission of an offense. Section 3 comes into play only after the principal offense has been committed by another, Skelly v. United States, 10 Cir., 1935, 76 F.2d 483, at pages 487, 488; Neal v. United States, 8 Cir., 1939, 102 F.2d 643, at pages 645, 646, hereby concealing him, furnishing him with means of flight, and frustrating the police in their efforts to apprehend him.

■■ In our charge we read § 3 verbatim, Count 7, charging the offense and outlined the evidence as to defendant's conduct in bringing about the prohibited result. In our judgment we made the distinction between the charge of aiding and abetting and that of being an accessory after the fact sufficiently clear for the jury to come to an intelligent decision.

■■■ May one who aids and abets in the commission of attempted robbery be found guilty as accessory after the fact? Following the same line of reasoning indulged in, supra, in distinguishing between conspiracy and substantive offenses and considering the attitude toward merger in this country, see Pinkerton v. United States, supra, 328 U.S. at page 643, 66 S.Ct. at page 1181, one would logically come to the conclusion that § 2 and 3 define separate and distinct offenses. Section 3 requires that an offense has been committed and that defendant assist the offender. 22 C.J.S., Criminal Law, § 95, citing only United States v. Hartwell, C.C.Mass.1869, 26 F.

10. See Parties to Crime, Rollin M. Perkins, 89 U. of Pa.L.Rev. 581 at 584. "* * * and aid given with mens rea is abetment."

Cas. page 196, No. 15,318; suggests that absence of the party at the time the crime was actually committed is necessarily implied in the definition, and see Blackstone's Commentaries cited in Skelly v. United States, supra, 76 F.2d at page 487, " 'An accessory is he who is not the *chief actor* in the offense, *nor present at its performance,* but is some way concerned therein, either before or after the fact committed.' " (Italics supplied.) Judge Evans, dissenting in United States v. Johnson, 7 Cir., 1941, 123 F.2d 111, at page 135, expressed some doubt speaking of double punishment and suggesting that the two offenses merged, but see Id., 1943, 319 U. S. 503, at page 518, 63 S.Ct. 1233, 87 L. Ed. 1546. Perkins, supra, at 605, suggests that the accessory may not himself be guilty of the felony as a principal, citing Crosby v. State, 1937, 179 Miss. 149, 175 So. 180, at page 181; People v. Chadwick, 7 Utah 134, 25 P. 737, and see Howard v. State, 1913, 9 Okl.Cr. 337, 131 P. 1100, but that one who is an accessory before the fact may become an accessory to the same offense after the fact, Perkins, Id., p. 606, citing Rex v. Blackson, 1837, 8 C. and P. 43, 173 Eng. Rep.R. 391; Springer v. State, 1897, 102 Ga. 447, 30 S.E. 971, and see Com. v. Darnell, 1955, 179 Pa.Super. 461, 116 A. 2d 310. Neither counsel met the problem at the trial nor adequately in their briefs or arguments.[11] Obviously the defendant was not actually present at the crime. It was in fact committed by White. Congress in its wisdom has seen fit to make hindering of defendant's apprehension a substantive offense. Morei v. United States, supra, 127 F.2d 827; Neal v. United States, supra, 102 F.2d 643. It does not partake of the nature of the principal offense nor is it any degree of it. State v. McAlister, 1934, 139 Kan.

672, 33 P.2d 314, 317; State v. Bowman, 1937, 92 Utah 540, 70 P.2d 458, at page 461, 111 A.L.R. 1393. Certainly there are elements present in violating § 3 not necessary to proof of guilt of violating § 2. While § 2 removed distinctions between principal in the second degree and accessory before the fact, "* * * accessory after the fact is * * * an offense of a different species of guilt, principally tending to evade the public justice, and is subsequent in its commencement to the other * * *" Blackstone, supra, p. 40.

 Applying the teaching of Aaronson v. United States, supra, 175 F. 2d 41, we hold that the offenses are separate and distinct.

 Finally, a problem not raised in the motion or supplemental motion for new trial but in defendant's brief. There was competent, credible evidence from which the jury could find that defendant worked steadily at complicated, difficult work while her husband, because of ill health, was not working; that money earned by defendant was used to finance White's ventures; that defendant insisted on being a part of the group in the planned robbery; insisted upon her husband waiting for White; was indignant when questioned and made misleading statements to the police; looked after her husband's welfare asking that he be seated, and was last to make a statement. Time after time she had opportunity to withdraw safely from the venture and to summon the police to her aid. As to the requisite measure of compulsion, coercion or necessity, see Shannon v. United States, 10 Cir., 1935, 76 F.2d 490, at page 493. " 'Coercion which will excuse the commission of a criminal act must be immediate and of such nature as to induce a well-grounded ap-

---

11. Skelly v. United States, supra, suggests that the acts of the principal and of the accessory after the fact constitute one offense, and see Com. v. Doris, 1926, 287 Pa. 547, at pages 549, 551, 135 A. 313; Com. v. Lawrence, 1925, 282 Pa. 128, at pages 132, 133, 127 A. 465; cf. as to a charge of conspiracy, Murray v. United

States, 7 Cir., 1926, 10 F.2d 409, 411; see United States v. Kissel, 1910, 218 U.S. 601, at page 607, 31 S.Ct. 124, 54 L.Ed. 1168; but cf. Fiswick v. United States, 1946, 329 U.S. 211, 216, 67 S.Ct. 224, 91 L.Ed. 196; Krulewitch v. United States, 1949, 336 U.S. 440, at pages 443, 444, 69 S.Ct. 716, 93 L.Ed. 790.

prehension of death or serious bodily injury if the act is not done. One who has full opportunity to avoid the act without danger of that kind cannot invoke the doctrine of coercion and is not entitled to an instruction submitting that question to the jury.'" Cited with approval in R. I. Recreation Center, Inc., v. Aetna Casualty and Surety Co., 1 Cir., 1949, 177 F.2d 603, at page 605, 12 A.L.R.2d 230, and see 22 C.J.S., Criminal Law, § 44, 15 Am.Jur. Criminal Law, § 318.

Is the rule otherwise where a married woman and her husband are involved? See IX Wigmore on Evidence, 3d Ed., § 2514, p. 425, "* * * the coercion of the husband, which in Blackstone's correct phrase may be 'an excuse for criminal misconduct' of the wife, may at common law be presumed from the husband's presence; this then creates for the prosecution a duty of adducing evidence of the wife's willing participation, the risk of non-persuasion remaining throughout upon the prosecution. But this presumption since the rise of feminism is on its way to disappearance."

See Id., IX Wigmore, p. 425, footnote 7, "The presumption is being abandoned by the federal courts; Dawson v. United States, 9 [Cir.], 1926, 10 F.2d 106 * * * Conyer v. United States, 6 [Cir.], 1936, 80 F.2d 292 (* * * presumption repudiated)." To which we add United States v. DeQuilfeldt, C.C. W.D.Tenn.1881, 5 F. 276, at page 278, the "* * * defence * * * is not a favored one, and, at least in modern times, has almost lost all solid foundation for its existence. * * *" United States v. Hinson, D.C.S.D.Fla. 1925, 3 F.2d 200; Haning v. United States, 8 Cir., 1932, 59 F.2d 942, at page

943; United States v. Swierzbenski, D. C.W.D.N.Y.1927, 18 F.2d 685.[12] See discussion and authorities cited in State v. Renslow, 1930, 211 Iowa 642, 230 N. W. 316, 71 A.L.R. 1111; Morton v. State of Tenn., 1919, 141 Tenn. 357, 209 S.W. 644, 4 A.L.R. 264.

Even if one were to indulge the presumption, it is a weak one and may be rebutted by slight circumstances. 20 Am.Jur. Evidence, § 215, p. 214; 27 Am.Jur. Husband and Wife, § 642, "* * * proof that her conduct was inconsistent with any coercion on his part suffices for the purpose," and see 41 C.J.S., Husband and Wife, § 222, pp. 717, 718. "Presumptions are only intended to supply the place of facts and not to contradict them, and cannot be relied upon where the facts actually appear." 2 Henry Pa. Evidence, supra, § 651, p. 77, and see Watkins v. Prudential Ins. Co., 1934, 315 Pa. 497, at page 503, 173 A. 644, 95 A.L.R. 869. Here there was an abundance of evidence to negative any presumption if any in fact existed. Cf. Burgner v. United States, 4 Cir., 1921, 272 F. 116; United States v. Terry, D.C.N.D.Cal.1890, 42 F. 317, at page 319; Kelly v. United States, 10 Cir., 1935, 76 F.2d 847; Johnson v. United States, supra, 157 F.2d 209; Thompson v. United States, supra, 227 F. 2d 671; Com. v. Hand, 1915, 59 Pa. Super. 286.

We charged the jury that marriage does not affect the capacity of the spouses to commit crime. 27 Am.Jur. Husband and Wife, § 638, 41 C.J.S., Husband and Wife, § 221. If in committing it they act of their own free will and not under coercion of the other they are held to the same responsibility for criminal acts as other persons. The rule is otherwise when a husband or wife or

12. At one time it was said to be conclusively presumed. See Trust Co. v. Sedgwick, 1877, 97 U.S. 304, at page 308, 24 L.Ed. 954, and see Ansley v. United States, supra, 135 F.2d at page 208, but citing Haning v. United States, supra, and see United States v. Birch, C.C.D.C. 1809, 24 Fed.Cas. p. 1147, No. 14,595.

There is some doubt whether even at common law the presumption should be indulged in a robbery case. See Note 4 A.L.R. 266, at page 278; see Note 71 A.L.R. 1116; 27 Am.Jur. Husband and Wife, § 641; 41 C.J.S., Husband and Wife, § 222, p. 717.

in fact any other person acts under the compulsion or coercion of another. The act and intent to institute a crime must be voluntary. They must be the act and intent of a free agent. That at one time the law recognized a husband and wife as one for all purposes; the wife couldn't testify, vote, serve as a juror, or own property, but she now stands on her own before the law. Sometimes wives are dominated by the husband and vice versa, but before the jury could find the defendant guilty they must first find she acted of her own free will. Incidentally, there were nine women on the jury, one of whom acted as foreman. As to the advancement of the law to meet current needs, see F.R.C.P. Rule 26; Nardone v. United States, 308 U.S. 338, 342, 60 S.Ct. 266, 84 L.Ed. 307; Patton v. United States, 1930, 281 U.S. 276, 50 S.Ct. 253, 74 L.Ed. 854, and see an excellent review of the cases in United States v. Lutwak, 7 Cir., 1952, 195 F.2d 748, at page 756.

In view of the foregoing, all of defendant's motions will be denied.