**UNITED STATES of America**

v.

**Joseph L. DOWNES and Leonard T. Downes.**

**Cr. No. 12904.**

United States District Court
M. D. Pennsylvania.
March 10, 1958.

Oliver Dibble, Sp. Asst. to Atty. Gen., Robert J. Hourigan, U. S. Atty., for plaintiff.

Joseph P. Brennan, Scranton, Pa., for defendants.

JOHN W. MURPHY, Chief Judge.

Defendants move to dismiss an indictment charging conspiracy to commit an offense against the United States, 18 U.S.C.A. § 371, i. e., " * * * to receive money and things of value for and on behalf of Joseph L. Downes, the representative of employees employed at Tobyhanna, in industry affecting interstate commerce, from the employers of such employees * * *, in violation of § 186(b) of Title 29 U.S.C.A."

From a reading of the indictment it appears that in the construction of facilities [1] for the Tobyhanna Signal Depot, a military installation in this district, prime contracts were awarded: (a) to Consolidated Construction Co., Inc., for the construction of warehouses; (b) Merritt, Chapman and Scott Corporation, construction of certain buildings and utility systems; (c) Pine Brook Iron Works for the unloading of steel and iron. Subcontracts were entered into under (a) and (b) with Colonial Sand and Stone Company to supply concrete for construction of the buildings, and with Ralph Cornell for the erection of steel.

As the construction contracts were starting Joseph L. Downes, President, Financial Secretary, Treasurer and Business Agent of the International Association of Bridge Structural and Ornamental Iron Workers, Local Union No. 489, an industry affecting interstate commerce,[2] and his brother, Leonard T. Downes, formed a partnership—Dunmore Iron Works—to engage in the business of erecting structural steel and reinforcing steel setting. Profits were to be shared equally.

The plan was to obtain contracts from employers having need of services of members of Local 489. Joseph Downes, by virtue of his position as Business Agent, was to importune and influence contractors to use the services of the partnership. His proprietary interest in the partnership was to be kept secret. When Cornell inquired as to the availability and quality of members of Local 489, Joseph Downes suggested that he contact Leonard Downes who had good men in sufficient numbers, and that Cornell would have no labor trouble. Cornell and Leonard Downes agreed that the partnership would furnish the men necessary for Cornell to perform his contract with Consolidated, the men to be carried on Cornell's payroll, the work to be supervised by the partnership, the profits to be shared equally between the partnership and Cornell. The same arrangements were made as to the Cornell contract with Merritt, Chapman and Scott, except that the profits were not to be divided until the latter completed its contract. Colonial contracted with the partnership for the erection of a concrete batch and stone crusher plants, the partnership to furnish and supervise the men. They were to be carried on Colonial's payroll. Colonial paid the partnership $534. Pine Brook Iron Works, which had a number of members of Local 489 on its jobs, engaged the partnership to perform its unloading contract, paying therefor $3,598.16.

Joseph Downes suggested to Norman Eastwood, General Project Manager for Merritt, Chapman and Scott, that he give some business to Leonard Downes.

---

1. To serve in interstate commerce.

2. Members of the local employed by prime and subcontracts engaged in construction at the Depot.

Thereafter the partnership was awarded the contract for installing reinforcing steel in certain buildings at the Depot. All members of Local 489 engaged in this work were carried on Merritt, Chapman and Scott's payroll; were supervised by Leonard Downes. The partnership received $4,998.69. On the foregoing and other jobs, Joseph Downes received between 1952 and 1955, $37,933.28.

In United States v. Lavery, D.C., 161 F.Supp. 283, we discussed at some length § 302(b) (d) of the Labor Management Relations Act, 1947, 29 U.S.C.A. § 186 (b) (d), reciting its provisions, the essential elements of such an offense, the meaning of the several terms, the proper policy and scope of the legislation, and setting forth all of the decided cases of which we were aware.

■■ Defendants argue they did not receive anything, particularly that Joseph Downes did not receive anything from any employer employing members of Local 489; that the partnership was the employer. Actually the charge in the indictment is conspiracy, a violation of § 371. As to the requirements of an indictment under that section and the distinction between a conspiracy and the object thereof, see United States v. Gilboy, D. C., 160 F.Supp. 442; United States v. Raff, D.C., 161 F.Supp. 276; United States v. Anthony, D.C.M.D.Pa.1956, 145 F.Supp. 323, at page 329. We cannot speculate on the evidence. Assuming arguendo the truth of the averments in the indictment, Joseph Downes was a "Representative" within the meaning of the Act, forbidden to accept or receive any money or thing of value from an "Employer" or his agent. The indictment alleges that he did so. As to what the proof will show, we will have to await the trial.[3]

An order denying defendants' motion will be filed herewith.

---

3. As to the other reasons assigned by defendants, see United States v. Gilboy supra; United States v. Raff, supra, discussing them seriatim and finding them to be without merit.