674

## UNITED STATES v. WINTERS.
### No. 117, Docket 20395.

Circuit Court of Appeals, Second Circuit.

Dec. 31, 1946.

The defendant and others were indicted in an indictment charging a conspiracy, between March 9, 1945 and July 25, 1945, to steal cotton sheets, cotton sheeting and certain other cotton goods which were moving as and were part of interstate shipments, and to conceal such theft. The defendant was also indicted in an indictment charging, in one count, theft of sheets and towels "on or about the 24th day of March, 1945," and, in a second count, theft of cotton goods "on or about the 17th day of March, 1945." The trials on the two indictments were consolidated.

Some of the sheets alleged to have been stolen were put in evidence by the government. These sheets were identified as a product of a Georgia firm which had shipped a consignment of sheets to New York on or about April 9, 1945. There was testimony to the effect that the consignment arrived intact at Pier 50 in New York, and was found one bale short when it was checked into a truck for delivery to the consignee. It was received one bale short by the consignee.

One Brender testified that he had purchased these sheets on or about April 9, 1945 from an individual named Belasko. There was testimony that showed that on the same day, April 9, 1945, Reynolds, one of the co-defendants who pleaded guilty, had taken part in the theft of a bale of sheets from Pier 50; that, in the course of covering his delivery route, Reynolds had stopped his truck, dismounted, and talked for some twenty minutes to an unidentified man in a doorway near Brender's place of business. When Reynolds was arrested a few days later, he had in his possession the names, addresses and telephone numbers of Belasko and Brender.

Hoffman, who helped load the sheets on Reynolds' truck, testified that he had twice done the same thing for appellant, Winters, and that Winters was working with one Thomas Martin. Hoffman also testified that it was Martin who arranged with him to load some sheets on Reynolds' truck.

Theodore Charles Martin, one of the persons indicted for conspiracy, was called as a witness by the government. On direct, he testified that the sheets were stolen

"about March 20th, I think around about that time." On cross, he testified that the theft was "around March 20th. I guess somewhere around that time." He also testified on cross-examination that he had given a statement to the F. B. I. in which he may have put the date at March 26, or that he may have so stated to a United States Attorney. The following colloquy then occurred between defendant's counsel, Zelenko, and the trial judge:

"Mr. Zelenko: At this time, your Honor, I ask the Court to inspect any statement this witness may have made in regard to the date when these sheets were stolen, because it appears now from his testimony on the stand and from the date in the indictment that there are different dates, and if there is any inconsistency I think I am entitled to question from the statement. That is the case of United States v. Krulevitch in this district.

"The Court: And you make that in the form of a motion, that request?

"Mr. Zelenko: I move first of all that I be permitted to inspect any statement this man may have made.

"The Court: I will deny that.

"Mr. Zelenko: I respectfully except.

"The Court: And you save your exception."

After the jury had been out for some time and had arrived at no agreement, the following colloquy occurred in the courtroom:

"The Court: Mr. Foreman, I want to inquire at this time if you consider that there is any possibility of your reaching a verdict.

"The Foreman: It does not look so, Judge.

"The Court: Well, you may be seated. Let me say to the ladies and gentlemen of the jury that you ought to make every possible effort to reach an agreement as reasonable men and women. You realize, of course, that we have tried this case now for four days and if you do not come to an agreement this case probably undoubtedly will have to be tried all over again.

"Mr. Zelenko: May I respectfully take an exception to those remarks of the Court?

"The Court: Yes.

"(Addressing Jury): Now, you should give heed and take counsel with your fellow members on the jury. You should not be holding out for any caprices, for any arbitrary reason, and while I would not want you for a moment to relinquish or abdicate any firm conviction that you may have, yet the minority ought to give due weight and due consideration to the majority.

"Now, you understand that I am not saying to you that you should relinquish any firm conviction you have, but I really think that you should retire again and as reasonable men and women you should make every endeavor, every effort to reach an agreement in this case.

"So I am going to ask you to retire again."

Twenty minutes later the jury reported a verdict. It acquitted defendant as to the theft but found him guilty of conspiracy. The judge imposed sentence of a year and a day. Defendant appeals.

Herbert Zelenko and Henry Gerson, both of New York City, for appellant.

John F. X. McGohey, of New York City (Bruno Schachner and Frederick H. Block, both of New York City, of counsel), for appellee.

Before L. HAND, CHASE, and FRANK, Circuit Judges.

FRANK, Circuit Judge.

█ 1. Defendant contends that because he was acquitted as to the substantive crime, he could not be convicted of conspiracy to commit that crime. He relies on United States v. Zeuli, 2 Cir., 137 F.2d 845, in which we held that, if a defendant is convicted of a crime which, by its nature, necessarily involves cooperation with another person, the defendant may not also be convicted of a conspiracy to commit the crime. But here the substantive crime, theft, is not one which necessarily involves cooperation with anyone else.

█ 2. Defendant argues that it was error to receive the exhibit which consisted of sheets because the sheets were not shown to have been in interstate commerce or to

have been stolen. The evidence amply supports the conclusion that they were shipped in interstate commerce and that Reynolds was involved in their theft. They were thus admissible against Reynolds, and, on proof of the conspiracy, against Winters.

3. We see nothing whatever in defendant's assertion that the judge's remarks concerning the desirability of reaching a verdict constituted coercion of the jury.

4. The government argues that defendant's counsel abandoned his request that the judge inspect the written statement of the witness Martin. We shall, however, assume that that request was not abandoned and that the judge denied it. As, in the circumstances, the defendant was unable to procure inclusion of the statement, sealed, in the record so that we might inspect it, United States v. Ebeling, 2 Cir., 146 F.2d 254, 256, 257, is inapposite; see United States v. Beekman, 2 Cir., 155 F.2d 580, 584. But there is no reason to believe that the statement contained any relevant material. For, at most, it would have shown that Martin, who testified that the theft occurred "about March 20," had previously referred to a different date. But the date, if at all material, related only to the substantive count on which the defendant was acquitted. Moreover, the evidence as to the date would merely have served to show a variance between the testimony and the date set forth in the indictment; such a variance would not have been error.

Affirmed.