**UNITED STATES of America**

v.

**Ray NEDLEY, Stanley Jochim, Vincent Ciancio and Paul Baurhenn.**

**Cr. No. 14894.**

United States District Court
W. D. Pennsylvania.
July 24, 1957.

Hubert I. Teitelbaum, 1st. Asst. U. S. Atty., and D. Malcolm Anderson, U. S. Atty., Pittsburgh, Pa., for the United States.

Ben Paul Jubelirer, Pittsburgh, Pa., for defendants.

GOURLEY, Chief Judge.

In this criminal proceeding the defendants were indicted on three separate counts which related to the conspiracy statute and the Hobbs Act. Defendants Nedley and Jochim were found guilty on all counts; Defendant Baurhenn not guilty of the substantive offenses but guilty of the conspiracy count, and Defendant Ciancio was found not guilty of all counts and discharged by the court from the custody of the law.

The Acts of Congress under which the defendants were indicted are commonly known as the Hobbs Act, 18 U.S.C.A. § 1951,[1] and the conspiracy statute, 18 U.S.C.A. § 371.[2]

Although it becomes necessary to consider the motion for judgment of acquittal and/or new trial of Defendants Nedley and Jochim separately from Defend-ant Baurhenn, motions of all defendants may be evaluated together on rules of law of general application.

Motion for Judgment of Acquittal

Defendants contend that the verdict was against the law and against the weight of the evidence.

Viewing the evidence in the light most favorable to the government, as the jury's verdict requires (United States v. Russo, 3 Cir., 123 F.2d 420), the facts involved are that on August 4, 1955, George Moore and Perry Honaker were operating a tractor-trailer from St. Louis, Missouri, enroute to Gimbels Department Store in Pittsburgh, Pennsylvania.

The events occurred in connection with a labor dispute involving relations between the Pittsburgh department stores and the Teamsters Union, but Moore, an individual carrier and operator of the vehicle, nor his helper Honaker were not involved in that dispute.

During the course of the movement of articles in interstate commerce, when the tractor-trailer arrived in Shaler Town-

---

1. "§ 1951. Interference with commerce by threats or violence

"(a) Whoever in any way or degree obstructs, delays or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined not more than $10,000 or imprisoned not more than twenty years, or both.

"(b) As used in this section—

"(1) The term 'robbery' means the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining.

\*　\*　\*　\*　\*

(3) The term 'commerce' means commerce within the District of Columbia, or any Territory or Possession of the United States; all commerce between any point in a State, Territory, Possession, or the District of Columbia and any point outside thereof; all commerce between points within the "same State through any place outside such State; and all other commerce over which the United States has jurisdiction." (18 U.S. C.A. § 1951)

2. "§ 371. Conspiracy to commit offense or to defraud United States

"If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.

"If, however, the offense, the commission of which is the object of the conspiracy, is a misdemeanor only, the punishment for such conspiracy shall not exceed the maximum punishment provided for such misdemeanor." (18 U.S.C.A. § 371).

ship, Allegheny County, Pennsylvania, Moore and Honaker stopped at a restaurant at which place Defendant Nedley informed them that they could not unload their truck in Pittsburgh, and that they could not move it from the place where it was parked, threatening violence to them and to their truck and its contents if they attempted to move it.

It is logical and reasonable to conclude under all the circumstances that the defendants were assigned to the highways and streets in the vicinity where the driver and helper had stopped for their meals, to see that members of the Union would obey the strike order. If this had not been the fact, there would be no basis for the meeting and discussion which was had with the driver of the tractor-trailer about his destination and cargo. The incidents in question did not just happen by chance.

The threats were made by Nedley in the presence of Jochim. After Moore called the Police Department for protection, the vehicle was escorted by Shaler Township Police, at Moore's request, to the Millvale Borough line. Prior to departure of the truck under escort, Defendants Baurhenn and Ciancio arrived in an automobile. The four men followed the truck in the two vehicles and at some point prior to reaching Millvale, one of the vehicles passed the truck and, after the police escort dropped off, blocked it off. Jochim got out of a vehicle and struck Moore in the face. One of the others jumped on the gas tank behind the cab and engaged in conduct which indicated efforts to enter the trailer where the transported goods was being carried.

The evidence disclosed that all defendants played a prominent role in stopping the tractor-trailer, and that all participated in the infliction of physical abuse and violence upon the persons of Moore, the driver, and Honaker, the helper, without cause, excuse or the least scintilla of justification. It was of the nefarious and brazen conduct befitting "goons" or hired trouble makers, devoid of the elementary decencies of human conduct, similar to the customary "gestapo" tactics to force, intimidate, and bludgeon persons to force them to engage in a conduct or make a decision contrary to that which they were not legally required to obey or perform.

In view of the compelling evidence of the complicity and active participation of all the defendants in the perpetration of the offense, I am amazed and startled that the jury acquitted Ciancio and failed to find Baurhenn guilty on all counts in the light of the latter's participation in the physical abuse perpetrated on Moore and Honaker.

Defendants premise their motion for acquittal on the ground that the government failed to prove the corpus delicti in that there was no proof that the defendants engaged in any conduct which constituted robbery under the Act of Congress or violated any Act of Congress under the conspiracy statute.

Defendants do not question the sufficiency of the evidence, viewing it in a light most favorable to the government, that interstate commerce was involved, that the defendants interfered or stopped for some period of time the movement of articles or commodities in such commerce, that the defendants had conspired together to do said acts, and that physical violence was threatened to the persons in charge of said vehicle and committed in furtherance of their plan and conspiracy.

Thus, we are confronted with the narrow question as to whether the evidence was sufficient for the jury to find that the acts of the defendants constituted robbery and a violation of the conspiracy statute in disregard of an act of Congress.

"Robbery" is specifically defined in the Hobbs Act as follows:

(b) (1) "The term 'robbery' means the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate

or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining." 18 U.S. C.A. § 1951.

Upon detailed study and analysis of the Hobbs Act under which two counts of the indictment are laid, I am convinced that the same must be read in the disjunctive so that the crime of delaying and obstructing commerce has been completed in the event of robbery, or attempted robbery, or the commission of threat of physical violence, to any person or property.

Nevertheless, the indictments upon which the convictions are predicated appear loosely drawn by confining the offense of attempt to obstruct and delay commerce to the single element of "robbery of the tractor and trailer."

To give legal credence to the convictions, therefore, it will be necessary to establish the offense of robbery as defined in the statute.

I am well aware that in criminal law a robbery requires a taking of possession of the goods as a prerequisite to the commission of the offense. I am further aware that possession may be actual or constructive. Constructive possession, as distinguished from actual possession, is that theoretical possession which exists in contemplation of law in instances where there is no possession in fact.

In my judgment, the stopping of a vehicle without consent of the person in control thereof or the operator, the placing of the persons in control of said vehicle in fear of personal harm and injury, and the use of physical force, violence and abuse to the person in charge and control thereof, constitutes an interference with the free operation and use of said vehicle in the manner desired, and such action creates an actual possession on the part of the persons responsible. In a well reasoned opinion of Judge McLaughlin of this Circuit rela-

tive to a prosecution for misapplication of bank funds, the court concluded that such misapplication for however brief in lapse of time was sufficient. United States v. Nystrom, 3 Cir., 237 F.2d 218. I likewise believe that a deprivation of possession by a placing in fear and resort to physical force and violence for a period however brief is sufficient to complete the offense of robbery.

The evidence adduced at trial established two such deprivations of possession, as evidenced in the first instance by such threats and intimidation on the part of the defendants as to require the operator of the truck to secure police assistance in escorting the vehicle and its contents to the municipal border to which the police jurisdiction extended, and further evidenced in the second instance, after the police escort had ceased, by threats and overt acts of violence upon the person of the truck driver and helper augmented by physical interference with the trailer and its contents.

But assuming that I were wrong in concluding that defendants had taken an actual possession of the tractor-trailer and its cargo, I believe that threats, substantiated by the presence of brute force, constituted such a placing in fear from exercising control and dominion over the tractor-trailer and its cargo that defendants had taken constructive possession of the same in the legal contemplation of the statute. Le Fanti v. United States, 3 Cir., 259 F. 460.

Since no appellate and Supreme Court interpretation of the statute in question has to the date of this writing been forthcoming, my conclusions are of first impression. Nevertheless, it is apparent that the definition of robbery as defined by Congress is not the common law definition. The statute does not impose the absolute requirement of a taking since the Act provides also for "obtaining." Nor does it require an asportation or that the perpetrator must intend to permanently deprive the owner or possessor of his property. The nature of the force or threats is considerably broader than the common law provisions.

The naked use of force and violence, and the placing in fear of imminent peril to one's physical well being by resort to hoodlum tactics, is, indeed, as efficient and calculating an artifice to achieve dominion of another's property as would be a physical and possessory seizing.

I am satisfied that the jury could have concluded, under the broad purview of the statute, that the overt acts, threats and violence on the part of defendants constituted robbery, more particularly, depriving the persons in possession of dominion and control over the vehicle and cargo. United States v. De Normand, 2 Cir., 149 F.2d 622.

An additional question arises as to Defendant Baurhenn in view of his conviction of the conspiracy count and simultaneous exoneration from guilt of the substantive offenses in Counts One and Two of the indictment.

The legal proposition posed is whether or not a verdict of guilty as to a conspiracy count predicated upon a violation of the Hobbs Act can stand when the defendant has been found not guilty of the substantive offense.

■ The law is well settled and universally accepted in conspiracy proceedings that as soon as a person joins a conspiracy, he is equally as guilty as he would have been if he had joined the conspiracy when it began, and he assumes responsibility for all that has been done before he joins. Also, the fact that the person plays a lesser or even a minor part in a conspiracy and is not the dominant member of a conspiracy in no way lessens his guilt.

The evidence clearly establishes that Defendant Baurhenn was present when the truck operator was beaten, and indeed held the operator while the others beat him.

■ The fact that defendant was acquitted as to the substantive crime would not preclude his conviction of conspiracy to commit said crime. United States v. Winters, 2 Cir., 158 F.2d 674.

Motions for judgment of acquittal will be refused.

## Motion for New Trial

In addition to the contentions raised in support of judgment for acquittal, defendants premise their request for new trial upon the proposition that the court committed substantial error in not charging the jury that they could only convict upon a finding that the defendants intended to rob Moore and/or Honaker of the tractor-trailer.

No such request for additional charge was made by the defense at the close of the court's charge. Nor was such reason advanced for new trial in the written motion, and was brought to the court's attention for the first time during oral argument.

Defendants have failed to make timely request for additional charge and have failed to comply with the Rules of Federal Criminal Procedure. Rule 30, 18 U.S.C.A.; Fowler v. United States, 5 Cir., 242 F.2d 860.

■ Nevertheless, in this connection, the court meticulously explained the offense, presented the definition of robbery as contained in the statute, and charged with extreme caution on the issue of burden of proof and reasonable doubt as to each count of the indictment as to all defendants. The charge was clearly sufficient. United States v. Gordon, 3 Cir., 242 F.2d 122.

■ Upon a most detailed review of the record, I must conclude that the jury could find that the acts of defendants were attempts to obstruct, delay and affect the movement of articles or commodities in interstate commerce, and that sufficient evidence was adduced to find that this attempt was by robbery.

■ Furthermore, a substantial basis exists to conclude beyond a reasonable doubt that all defendants entered into the conspiracy charged to violate the Hobbs Act, that they were all part of said plan and scheme when the overt acts were committed and participated in one degree or another to effectuate the reasons for the conspiracy.

■ Cognizant of the prerogative of the jury to resolve issues of credibility,

assuming the truth of the government's evidence and giving the government the benefit of all legitimate inferences to be drawn therefrom, and further recognizing that it is not my prerogative to weigh the evidence, it is my considered judgment that the verdict of guilty as to each count must be sustained. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680; United States v. Nystrom, supra.

Motion for new trial will be refused. An appropriate Order is entered.